**CITY CENTRAL BANK & TRUST CO. et al. v. BYRNE et ux.**

No. 8733.

Court of Civil Appeals of Texas. San Antonio.

Feb. 17, 1932.

Rehearing Denied March 23, 1932.

R. F. Spencer, A. J. Lewis, and L. L. Morrison, all of San Antonio, for appellants.

W. G. Gayle, of Beeville, for appellees.

SMITH, J.

In November, 1921, C. E. Byrne and wife executed a deed of trust upon their 206-acre farm in McMullen county to secure an existing debt in favor of the State National Bank of San Antonio. In this deed of trust the Byrnes expressly designated a house and lots then owned by them in the town of Tilden as their homestead. They made a like representation in a statement of their financial condition rendered to the bank, as an inducement to the latter to extend the credit secured by the deed of trust. By a like statement and designation in November, 1922, they secured additional credit from the bank, and an extension of the existing credit and lien. Finally, upon the Byrnes' default, the City Central Bank & Trust Company, which had acquired the rights of the State National Bank, procured the trustee in the deed of trust to advertise the farm to be sold in sat-

isfaction of the debt, as provided in said deed of trust. Before the advertised sale date the Byrnes brought this action to restrain the sale, and for judgment canceling the deed of trust and lien and removing cloud cast upon their title to the farm, upon the ground that it was their homestead at the time of the execution of the deed of trust and extension thereof. From a judgment in favor of the Byrnes, as prayed for, the bank has appealed.

In the year 1901, appellee C. E. Byrne, then a single man, acquired a certain 200-acre farm in McMullen county. He married in 1905 and with his wife made his home on said farm, residing thereon continuously until in 1914 when he rented a small dwelling house in Tilden, the county seat, so that his wife and children could reside therein during term time while the children attended school. He purchased this dwelling in 1916, and still owns it. His wife and children again resided therein during the 1917–1918 school term. During the 1918–1919 and 1919–1920 terms the family resided in a rented house at Wentz, where the children attended school, and during the school years 1920–1921 and 1921–1922 they resided in a rented house at Three Rivers. They resided on the farm, whence the children attended a local school, from the fall of 1922 to late in 1923, when they moved into the house at Tilden. During all the intervening period from 1914 to the fall of 1923, although spending the school terms elsewhere, the family lived on the farm during vacations. The husband lived on the farm throughout the whole period, except for week-ends with his family wherever they were at the time, and except for temporary absences looking after his interests elsewhere. The family considered and intended this farm to be their home, kept their domestic stock, chickens, and the like there, kept the house furnished and equipped as their home. The mother and father paid their poll taxes as residents of that precinct, and the father served as county commissioner for that precinct from 1912 to 1924. The foregoing facts, of course, constituted this farm the homestead of appellees, and the fact that the mother and children resided at other places during intervening school terms in order to give their children educational advantages did not have the effect of depriving the farm of its character as the family homestead.

Appellant makes the foregoing facts, as interpreted by it, the basis of its contention that "the homestead character could attack to either a farm or a house and lots in a town, to the exclusion of the other, according as the husband and wife intend, creates an ambiguous situation, and their written declaration that the town property is their homestead is binding upon them and they are es-

topped to deny their declaration of its designation, and cannot insist that the farm is their homestead."

The trial judge held against appellant upon this contention, upon his findings that: "On the respective dates of the execution and delivery of the aforementioned deeds of trust, to-wit: on November 25, 1922, and on Nov. 26, 1921, plaintiffs, C. E. Byrne, as the head of his family, and his wife, Jennie Byrne, together with their family, were actually residing upon, claiming and using the tracts of 206.15 acres, for a homestead, which tract was covered by the above mentioned deed of trust lien and which tract is described by metes and bounds as follows: * * *" and "at the respective dates of the execution and delivery of the aforementioned deeds of trust, plaintiffs with their family were residing on the above tract as their homestead and were not residing upon certain lots in the town of Tilden, McMullen County, Texas, and had not resided upon said lots since the year 1918, some 4 years prior to the execution of said deed of trust lien, the dwelling house on said lots having been wrecked in the 1919 tropical storm, and being vacant and uninhabitable as a place of residence at the time of the execution of the aforementioned deed of·trust lien and being at such time in no manner subjected by the plaintiffs to homestead purposes." We adopt those findings as the findings and conclusions of this court.

As the trial court found, appellees were not residing upon the Tilden property at the time they executed the original deed of trust or the extension or renewal thereof, and designated that property as their homestead, nor had they resided thereon at any time during the preceding three and four years, respectively. That property was not habitable at the times of that designation, for it had been wrecked in the early fall of 1919, and had not been rebuilt or rehabilitated as a dwelling place. On the other hand, appellees were actually residing upon the farm exclusively as their home during the four-year period, and were actually and exclusively so occupying it at the very time the deeds of trust were executed, and at the very times they designated the Tilden property as their homestead. That designation was false, of course. But it was so palpably false, so patently contrary to the open and obvious facts, known to appellant, that the latter was required to take notice thereof, and will not now be

heard to say that the situation was ambiguous, and that it was misled by appellees' false declaration that the Tilden property was their homestead, when the farm was known by appellant to be such in law and fact. The false declaration of appellees could not change the character of the true homestead, and to give effect to such declaration would defeat the purpose of the constitutional exemption of the homestead from forced sale. (Const. Art. 16, § 50) Texas L. & L. Co. v. Blalock, 76 Tex. 85, 13 S. W. 12, 13; Kempner v. Comer, 73 Tex. 196, 11 S. W. 194; Hines v. Nelson (Tex. Civ. App.) 24 S. W. 541. The true rule was thus stated by Chief Justice Stayton in the Blalock Case, first cited above:

"The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the constitution declares no lien, such as claimed in this case, can exist.

"Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make. * * *

"The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution.

"If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution. [Equitable] Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Pellat v. Decker, 72 Tex. 581, 10 S. W. 696; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194."

The judgment is affirmed.