United States Court of Appeals,

Fifth Circuit.

No. 91–1031.

In the Matter of Kelly P. BRADLEY, Debtor.

Kelly P. BRADLEY, Appellant,

v.

PACIFIC SOUTHWEST BANK, FSB, Appellee.

May 13, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

JOHNSON, Circuit Judge:

Even before the ink had dried on the joint resolution of Congress that admitted Texas as the twenty-eighth state in the Union, Texas citizens enjoyed broad homestead rights. *See* Tex. Const. art. VII, § 22 (1845). Not much has changed in the last 145 or so years. As it did in the dawning days of the state, the homestead exemption in Texas continues to "protect citizens and their families from the miseries and dangers of destitution." *Franklin v. Coffee,* 18 Tex. 413, 415–16 (1857). Kelly P. Bradley, the debtor in this bankruptcy proceeding, appeals the determination of both the bankruptcy court and the district court that she is not entitled to homestead rights in all 129.47 acres of her family farm. Concluding that this determination is based upon an incorrect understanding of Texas homestead law, this Court reverses the judgment of the courts below and remands to the district court for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

Debtor Kelly P. Bradley and her husband, Scott Bradley, own 129.47 acres of rural property located within the city limits of Westlake, Texas. The Bradleys acquired this property, known as "Paigebrooke Farm," through a partnership agreement they executed with several other investors in 1977. The partnership agreement specified that the Bradleys could occupy fifteen acres of

Paigebrooke Farm as their homestead, but the partnership would seek to develop the remaining 114.47 acres of the property for commercial or residential use. The Bradleys moved into a house located in the approximate center of the farm and, in accordance with the partnership agreement, constructed several ranch buildings within an unfenced fifteen acre section surrounding the family house.[1] Since 1978 they have used the remaining acreage to grow hay and raise cattle.

In 1982, after repeated unsuccessful attempts to develop the remaining 114.47 acres of Paigebrooke Farm, the Bradleys terminated the partnership and purchased the interests of the other investors. Subsequently, the Bradleys have used all 129.47 acres of Paigebrooke Farm as their home and ranch. Besides growing hay and raising cattle on the remaining 114.47 acre section of the property, since at least 1985 they have also bred and sold horses on the property. The Bradleys have registered the entire farm with the USDA Soil Conservation Service and have filed Schedule F farm income forms with their annual tax returns.

In August 1985 Kelly Bradley and her husband entered into a loan transaction with Seguin Savings Association, the predecessor of current creditor Pacific Southwest Bank, FSB. Seguin Savings agreed to loan the Bradleys a sum in excess of five million dollars. As part of the collateral to secure payment of the note, the Bradleys granted Seguin Savings a third lien deed of trust covering all of Paigebrooke Farm except the fifteen acres on which their home and ranch buildings stood. In addition, the Bradleys executed a "homestead disclaimer" that purported to release all of their homestead claims to the 114.47 acres.

Two years later, Kelly Bradley filed a voluntary petition for Chapter 11 bankruptcy relief.

---

[1]According to the bankruptcy court's findings of fact and conclusions of law, the buildings that the Bradleys added to the Paigebrooke Farm property included "a small foreman's house, an eight-stall horse stable with a tack and feed room, two storage sheds, another storage shed for hay, a chicken coop, two corrals and a chute for working cattle." Findings of Fact at 3.

Electing the state exemption scheme authorized in the Bankruptcy Code,[2] Bradley claimed a rural homestead in all 129.27 acres of Paigebrooke Farm. Because Texas law does not permit creditors to satisfy their claims through forced sale of a homestead, Bradley requested that the bankruptcy court disallow Seguin Savings' secured claim against Paigebrooke Farm. On December 12, 1988, the bankruptcy court entered findings of fact and conclusions of law. The court concluded that Paigebrooke Farm indeed was rural in character and that Bradley had neither alienated nor abandoned her homestead rights to the property. The court further concluded, however, that the debtor could claim only fifteen acres of the farm as her rural homestead.[3] On November 26, 1990, the district court affirmed these conclusions. 121 B.R. 306.

## II. DISCUSSION

Texas law recognizes both urban and rural homesteads. If a debtor uses land as "an urban home or as a place to exercise a calling or business in the same urban area," then the debtor is entitled to claim up to an acre of the land, in one or more tracts, as an urban homestead.[4] Tex.Prop.Code Ann. § 41.002(a) (Vernon Supp.1991). *See also* Tex. Const. art. XVI, § 51.[5] If a debtor uses land

[2]A Texas debtor in bankruptcy proceedings must elect between the "federal" and the "state" exemption scheme. *In re Dyke,* 943 F.2d 1435, 1438 (5th Cir.1991). As a general rule, election of the state exemption scheme permits the debtor to claim the general exemptions contained in the Texas Property Code, while election of the federal scheme relegates the debtor to the exemptions specified in section 522(d) of the Bankruptcy Code. *In re Goff,* 706 F.2d 574, 579 (5th Cir.1983). "The debtor cannot elect the most favorable exemptions in each scheme: he must weigh the advantages of each scheme and then choose one or the other." *Dyke,* 943 F.2d at 1438.

[3]The bankruptcy court attempted to buttress this conclusion with supplemental findings of fact and conclusions of law entered on December 27, 1988, in which it found that (1) a 114.47 acre portion of Paigebrooke Farm was vacant development property and (2) the Bradleys had expressed their intent to use only fifteen acres of the farm as their homestead.

[4]To the extent that the urban homestead does not exceed one acre, the urban homestead encompasses the land on which the economic head of the family exercises her business or calling. *See* McSwain, *The Texas Business Homestead in 1990,* 42 Baylor L.Rev. 657, 659 (1990).

[5]Prior to 1983 amendments to the Texas Property Code, debtors could only exempt a maximum of $10,000 of the value of their urban homestead. This monetary exemption is no longer available—even to urban homesteads created before 1983. The 1983 amendments, which permit Texas debtors with urban homesteads to exempt up to an acre of land, apply retroactively. Tex.Prop.Code Ann. § 41.002(d) (Vernon Supp.1991) ("The definition of a homestead as

"for the purposes of a rural home," then the debtor is entitled to claim up to two hundred acres of the land, in one or more tracts, as a rural family homestead.[6] Tex.Prop.Code Ann. § 41.002(b) (Vernon Supp.1991). *See also* Tex. Const. art. XVI, § 51. In either instance, the Texas homestead is exempt from forced sale "except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon." Tex. Const. art. XVI, § 50.

Bradley contends that the bankruptcy court, as well as the district court, erred in limiting her to a fifteen acre homestead. She argues that, under Texas law, she is entitled to claim all 129.47 acres of Paigebrooke Farm as her rural homestead. On appeal of a bankruptcy proceeding, this Court applies a two level standard of review. We review the factual findings of the bankruptcy court under the "clearly erroneous" standard. *In re Niland,* 825 F.2d 801, 806 (5th Cir.1987). According to this deferential standard, we should overturn the factual findings of the bankruptcy court only when, after review of all the evidence, we are left with a "firm and definite conviction" that the bankruptcy court committed a mistake. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Unlike factual findings, however, we review the legal conclusions of the bankruptcy court under the less deferential de novo standard. *In re Missionary Baptist Foundation,* 712 F.2d 206, 209 (5th Cir.1983). Thus, if a bankruptcy court premises a finding of fact upon an

provided in this section applies to all homesteads in this state whenever created."). *See also In re Webb,* 954 F.2d 1102, 1107 (5th Cir.1992).

[6]A debtor with a family is entitled to claim a rural homestead consisting of no more than two hundred acres. Tex.Prop.Code Ann. § 41.002(b)(1). A single adult debtor, on the other hand, is entitled to claim a rural homestead consisting of no more than one hundred acres. *Id.* § 41.002(b)(2).

Unlike the urban homestead, *see supra* note 4, the rural homestead does not encompass a "business homestead," and indeed, the operation of a business on part of a rural homestead forfeits the homestead protection on that part of the property. *O'Brien v. Woeltz,* 94 Tex. 148, 58 S.W. 943, 945 (1900). Aside from business operations, however, the rural homestead does include all land—up to the limit of two hundred acres—that is used for the support of the debtor and her family. *See Clark v. Salinas,* 626 S.W.2d 118, 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

improper legal standard, the finding of fact "loses the insulation of the clearly erroneous rule." *Id.*

The de novo standard requires that this Court conduct an independent analysis of Texas homestead law. *See Salve Regina College v. Russell,* ⸺ U.S. ⸺, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).[7] Because homesteads are favorites of the law, we must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions. *See Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.Civ.App.—Tyler 1979, no writ); *Kunkel v. Kunkel,* 515 S.W.2d 941, 946 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *Garrett v. Katz,* 23 S.W.2d 436, 438 (Tex.Civ.App.—Dallas 1929), *modified on other grounds,* 27 S.W.2d 373 (Tex.Civ.App.—Dallas 1930, no writ). Indeed, we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly "assist a dishonest debtor in wrongfully defeating his creditor." *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673, 678 (1931). Mindful of these principles, we turn to the substance of this case.

A. *Initial Burden of Proof*

It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property. *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). To meet this initial burden of proof, the claimant must "show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Once the claimant has established the homestead character of her property, the burden shifts to the creditor to disprove the continued existence of the homestead. *See Sullivan v. Barnett,* 471 S.W.2d 39, 43 (Tex.1971); *Lifemark Corp.,* 655 S.W.2d at 314.[8]

---

[7]To interpret state homestead rights, this Court must, of course, look to state law. *See In re Moody,* 77 B.R. 580, 590 (S.D.Tex.1987), *aff'd,* 862 F.2d 1194 (5th Cir.1989).

[8]Once gained, homestead rights are not easily lost. "The only way for property to lose its homestead, after it has been dedicated as a homestead, is by death, abandonment or alienation."

The initial burden to establish the homestead character of property is a short hurdle. In the usual case, mere evidence of "overt acts of homestead usage" is sufficient to meet this burden. As long as the claimant can demonstrate that she has used her property for homestead purposes, then the Texas courts will presume that the homestead claimant possesses the requisite intent. *See Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759, 761 (1934). "Possession and use of land by one who owns it and who resides upon it makes it the homestead *in law and in fact.*" *First Interstate Bank v. Bland,* 810 S.W.2d 277, 286 (Tex.App.—Fort Worth 1991, no writ) (emphasis added). *See also Lifemark Corp.,* 655 S.W.2d at 315 ("[I]nvestigation of intention need not be made when the land is actually put to homestead use. Such actual use is the most satisfactory and convincing evidence of intention.").[9]

In the instant case, Bradley demonstrated that she and her family have used all 129.47 acres of Paigebrooke Farm for homestead purposes. As the bankruptcy court acknowledged in its findings of fact, Bradley and her family live in a house on the property and have used the entire farm to grow hay and raise livestock. Findings of Fact at 3. The Texas courts have routinely held that use of property for farming or ranching purposes, accompanied by occupancy of the property, is sufficient to imbue the property with a homestead character. *See Fajkus v. First National Bank,* 735 S.W.2d 882, 884 (Tex.App.—Austin 1987, writ denied) (grazing of cattle is use of property for homestead purposes); *Clark v. Salinas,* 626 S.W.2d 118, 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) (cultivation of crops is use of property for homestead purposes). Accordingly, we conclude that Bradley has satisfied her burden to establish the homestead character of her farm as a matter of law.

*Garrard v. Henderson,* 209 S.W.2d 225, 229 (Tex.Civ.App.—Dallas 1948, no writ).

[9]Evidence of objective intent might be material in cases in which specific circumstances raise the issue. *See Braden Steel Corp. v. McClure,* 603 S.W.2d 288, 293 (Tex.Civ.App.—Amarillo 1980, no writ). For example, if a rural family homestead claimant owns several two hundred acre tracts of land, all of which the claimant uses for homestead purposes, then evidence of intent is material to determine which of the tracts is the homestead. Similarly, if a rural family homestead claimant owns a single four hundred acre tract of land, all four hundred acres of which the claimant uses for homestead purposes, then evidence of intent is material to determine which two hundred acres of the tract is the homestead. No such circumstances, however, are evident in the instant case.

Despite the fact that Bradley established her homestead rights in Paigebrooke Farm as a matter of law, the bankruptcy court limited her homestead rights to fifteen acres. According to the bankruptcy court, the evidence indicated that Bradley and her husband *intended to use* only fifteen acres of Paigebrooke Farm as her homestead. To support this conclusion, the bankruptcy court emphasized (1) that the remaining 114.47 acre portion of the farm was "vacant" property which the Bradleys held for investment and development purposes and (2) that the Bradleys executed a disclaimer in which they represented that the remaining 114.47 acres was not part of their homestead. While we do not necessarily dispute the truth of these two findings,[10] we cannot conclude that these findings are relevant. As we have noted, the evidence that Bradley used Paigebrooke Farm for homestead purposes obviates consideration of any evidence that she did not *intend* to claim all of it as her homestead. *See Lifemark Corp.,* 655 S.W.2d at 315.

The finding that Bradley held 114.47 acres of Paigebrooke Farm open for development does not support the severance of this acreage from her homestead. Unless the claimant has abandoned part of the homestead,[11] Texas law does not favor the severance of a single contiguous tract of land into homestead and non-homestead sections. *See Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759, 760 (1934) (contiguity of parcels presents a situation favorable to the extension of the

---

[10]We are somewhat troubled with the bankruptcy court's characterization of the 114.47 acre portion of the farm as "vacant." While there were no improvements on this portion of Paigebrooke Farm, the record clearly indicates that this acreage was occupied and used to support farming and ranching activities. To the extent this finding that the 114.47 acre portion was "vacant" was meant to supplant the bankruptcy court's initial finding that Bradley used the land to grow hay and raise cattle, it is clearly erroneous.

[11]To abandon a homestead, the owner of the property must evince a "present, definite and permanent intent to cease use of the property for homestead purposes." *West Texas State Bank v. Helms,* 326 S.W.2d 47, 49 (Tex.Civ.App.—Eastland 1959, no writ). If a property owner uses part of his homestead property for purposes inconsistent with the homestead laws, then the owner has effectively abandoned that part of the homestead. *See Uvalde Rock Asphalt Co. v. Warren,* 127 Tex. 137, 91 S.W.2d 321, 323 (1936); *Massillon Engine & Thresher Co. v. Barrow,* 231 S.W. 368, 370 (Tex.Comm'n App.1921, judgm't adopted); *Ray v. Metzger,* 165 S.W.2d 207, 210 (Tex.Civ.App.—Fort Worth 1942), *aff'd,* 141 Tex. 372, 172 S.W.2d 480 (1943); *Scottish American Mortgage Co. v. Milner,* 30 S.W.2d 582, 584 (Tex.Civ.App.—Texarkana 1930, writ ref'd). In this case, the bankruptcy court expressly concluded that Bradley never abandoned her homestead rights in the farm. Findings of Fact at 3. The creditor on appeal does not dispute this finding.

homestead to the outside boundaries of the land); *Vaughn v. Vaughn,* 279 S.W.2d 427, 435 (Tex.Civ.App.—Texarkana 1955, writ ref'd n.r.e.) (same). Absent abandonment, the severance of a tract of land from the homestead is permissible only if there is *no* evidence that the severed tract is used for homestead purposes. *See O'Brien v. Woeltz,* 94 Tex. 148, 58 S.W. 943, 945 (1900); *McDonald v. Clark,* 19 S.W. 1023, 1025 (Tex.1892); *Prince v. North State Bank,* 484 S.W.2d 405, 410 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.); *Ferguson v. Smith,* 206 S.W. 966, 967 (Tex.Civ.App.—Dallas 1918, writ ref'd). *But see Massillon Engine & Thresher Co. v. Barrow,* 231 S.W. 368, 370 (Tex.Comm'n App.1921, judgm't adopted) (law implies constructive use of entire tract until there is use inconsistent with the homestead laws). In this case, where the debtor has conclusively demonstrated that she used all 129.47 acres of Paigebrooke Farm for homestead purposes, Texas law does not permit severance.

We might have reached a different conclusion if Bradley had successfully sold or leased part of Paigebrooke Farm for commercial or residential development. In such an event, Bradley would have abandoned that part of the farm.[12] The record here reveals, however, that the Bradleys did not realize their intentions to develop part of Paigebrooke Farm. *Unsuccessful* attempts to sell or develop property do not "deprive it of its homestead character." *West Texas State Bank v. Helms,* 326 S.W.2d 47, 49 (Tex.Civ.App.—Eastland 1959, no writ). *See also Sullivan,* 471 S.W.2d at 43; *West v. Austin Nat'l Bank,* 427 S.W.2d 906, 912 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.).[13] Because Bradley did not actually sell or lease Paigebrooke Farm for commercial or residential development, her attempt to develop the farm does not defeat her homestead rights in the entire farm. *See Gaar, Scott & Co. v. Burge,* 49 Tex.Civ.App. 599, 110 S.W. 181, 183 (1908) ("an intention to sell the homestead and efforts in that direction, and an intention to remove from it in case a sale is made, may coexist with an intention to remain and continue to occupy the homestead").

---

[12]*See supra* note 11.

[13]The mere attempt to sell or develop land reflects, at best, the intent to abandon a homestead in the future. An intent to abandon land in the future does not divest the land of its homestead character. *Bass v. Ware,* 203 S.W.2d 1001, 1002 (Tex.Civ.App.—Waco 1947, writ ref'd n.r.e.).

Likewise, the fact that Bradley executed a document disclaiming her homestead rights in part of Paigebrooke Farm does not eliminate her homestead rights in the entire farm. Under Texas law, a homestead disclaimer, while effective in circumstances that would *estop* a claimant from asserting the homestead right,[14] is irrelevant in the determination whether the claimant has satisfied her initial burden of proof. *See Bland,* 810 S.W.2d at 283; *Englander Co. v. Kennedy,* 424 S.W.2d 305, 308 (Tex.Civ.App.—Dallas), *writ ref'd per curiam,* 428 S.W.2d 806 (Tex.1968). A homestead disclaimer cannot "change the character of the true homestead." *City Central Bank & Trust Co. v. Byrne,* 47 S.W.2d 432, 434 (Tex.Civ.App.—San Antonio 1932, writ ref'd). As long as the claimant has occupied the property in question and used it for homestead purposes, then an attempted homestead disclaimer will not preclude her from claiming the homestead exemption. *Ray v. Metzger,* 165 S.W.2d 207, 209 (Tex.Civ.App.—Fort Worth 1942), *aff'd,* 141 Tex. 372, 172 S.W.2d 480 (Tex.1943). In this case, as we have noted, it is clear that Bradley has occupied all 129.47 acres of Paigebrooke Farm and used it for homestead purposes.

In sum, then, Bradley has established the homestead character of Paigebrooke Farm as a matter of law. She has demonstrated that she occupies a house on the farm and that she uses the entire farm for homestead purposes. Neither the fact that Bradley attempted to hold the farm open for development purposes nor the fact that Bradley executed a disclaimer of her homestead rights in part of the property alter this showing. Therefore, Bradley cannot be foreclosed from claiming a homestead exemption in all 129.47 acres of Paigebrooke Farm.

B. *Estoppel*

Creditor Pacific Southwest argues that, even if this Court concludes that Bradley satisfied her initial burden to establish her homestead rights in all 129.47 acres of Paigebrooke Farm, Bradley should be estopped from claiming a homestead right in the vacant 114.47 acre section of the farm. Pacific Southwest contends that Bradley's homestead disclaimer, in which the debtor represented that

---

[14]*See infra* section II.B.

the 114.47 acre section was not part of her homestead, estops her from invoking her state constitutional and statutory homestead rights because Pacific Southwest has relied on her disclaimer to its detriment.

In *In re Niland,* 825 F.2d 801 (5th Cir.1987), this Court rejected a similar argument. The debtor in *In re Niland,* like Bradley in the instant case, had executed a disclaimer of his homestead rights after he had obtained a loan secured by a deed of trust on his property. The creditor argued that the debtor's misrepresentation of his homestead rights estopped the debtor from claiming the property as his homestead. The Court, however, reasoned that "a homestead claimant is not estopped to assert his homestead rights in property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property." *Id.* at 808. Finding that the debtor indeed was in actual use and possession of his property at the time he misrepresented his homestead rights, the Court concluded that the debtor was not estopped from claiming the property as his homestead. *Id.* at 810.

Recently, in *First Interstate Bank v. Bland,* 810 S.W.2d 277 (Tex.App.—Fort Worth 1991, no writ), the Fort Worth Court of Appeals confirmed that a debtor who establishes homestead rights as a matter of law cannot be estopped from claiming her homestead exemption. "When the facts of actual possession and use are coupled with the interest in the property held by the borrower, the premises become a homestead in fact and in law.... A lender stands charged with notice of the fact of homestead and it matters not what declarations to the contrary the borrower might make." *Id.* at 283–84.[15]

As recognized in *Niland* and reiterated in *Bland,* lenders are subject to a duty of inquiry. If the circumstances were such that a lender should have known or suspected that a homestead

---

[15]The *Bland* court observed that this rule of law rests "on the theory that the fact of actual possession and use of the property as a home is of so obvious a nature that the lender cannot close his eyes to the facts." 810 S.W.2d at 283.

disclaimer was false, then the Texas courts will not enforce the disclaimer against the debtor.[16] This rule would appear to be unfair to lenders and creditors—allowing debtors to mislead lenders about the extent of their homestead rights in order to obtain loans. Nonetheless, Texas law places this burden on the lender. "To hold otherwise would practically abrogate the [Texas] Constitution." *Texas Land & Loan Co. v. Blalock,* 76 Tex. 85, 13 S.W. 12, 13 (1890). *See In re Niland,* 825 F.2d at 809 ("This rule is ... based on a recognition that many in financial difficulties will sign anything to obtain money from lenders, and that if not put to a duty of inquiry, many lenders will simply have the borrower execute a form affidavit stating that the property is not claimed as homestead.").

In the instant case, the circumstances were such that Pacific Southwest's predecessor, Seguin Savings, should have known or suspected that Bradley's homestead disclaimer was false. At the time that Bradley represented to Seguin Savings that she did not have homestead rights in the vacant 114.47 acres of Paigebrooke Farm, Bradley and her family lived in a house on the farm and was using the entire farm—including the 114.47 acre section—for homestead purposes.[17] Since the available facts indicated that Bradley was occupying and using all 129.47 acres of Paigebrooke Farm as her homestead, her contrary declaration does not estop her from claiming the homestead exemption.

---

[16]The *Bland* court recognized only two situations in which a disclaimer will estop the debtor from claiming homestead rights: (1) at the time of the disclaimer, the debtor owned two or more noncontiguous pieces of property, either of which—but not both—could constitute the homestead; and (2) at the time of the disclaimer, the property described in the disclaimer is not being used for homestead purposes. 810 S.W.2d at 284. Neither of these situations pertains here. Although the Bradleys owned several tracts of land in north Texas, the evidence reveals that none of these tracts could have supported a homestead exemption—that is, the Bradleys did not have a home on any of these tracts.

[17]Bradley and her husband have made other homestead disclaimers besides the one they made to Seguin Savings. For example, in the 1977 partnership agreement, Bradley and her husband stated that they would occupy as their homestead only the fifteen acres on which their home and related ranch buildings were located. This 1977 agreement perhaps was executed before the Bradleys began to use the vacant 114.47 acres of Paigebrooke Farm for homestead purposes. If so, then the agreement might estop the Bradleys from claiming homestead rights against a lender who relied on this particular agreement. *See In re Niland,* 825 F.2d at 808. Seguin Savings, however, did not rely on this 1977 agreement. Rather, the evidence indicates that if Seguin Savings relied on any homestead disclaimer, it relied upon the disclaimer that the Bradleys executed when they obtained their 1985 loan from Seguin Savings.

C. *Rural Character of the Homestead Property*

Pacific Southwest argues that, even if this Court should conclude that Bradley is not estopped from claiming homestead rights in all 129.47 acres of Paigebrooke Farm, this Court should still affirm the bankruptcy court on the basis that Bradley cannot claim a rural homestead in the property. Pacific Southwest claims that because Paigebrooke Farm is located within the city limits of Westlake, Texas, Bradley can only claim an urban homestead of one acre. *See* Tex.Prop.Code Ann. § 41.002(a) (Vernon Supp.1991). This argument fails. City limit signs do not determine the urban or rural character of a homestead. Instead, according to the Texas Property Code, "[a] homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection." *Id.* § 41.002(c).[18] At the time that Bradley began to use

---

[18]Section 41.002(c) of the Texas Property Code is a new addition to the Texas Property Code. The Texas legislature added this definition in 1989 as part of its function to implement the homestead provisions in the Texas Constitution. *See In re Moody,* 862 F.2d 1194, 1201 (5th Cir.1989) ("The Texas Constitution is logically viewed as an enabling act, with the statute as its implementation ..."). To the extent that it applies, it governs even those homesteads created before 1989. Tex.Prop.Code Ann. § 41.002(d) (Vernon Supp.1991).

The Texas Constitution states that "the homestead in a *city, town or village* shall consist of lot or lots amounting to not more than one acre of land." Tex. Const. art. XVI, § 51 (emphasis added). One commentator has suggested that, because the constitution *seems* to define the urban homestead with reference to the location of city limits, the legislature might have abused its authority in asserting a different definition of the urban homestead in section 41.002(c). McSwain, *supra* note 4, at 661. The state constitution, though, does not define the term "in a city, town or village." Nor does the constitution attempt to determine when a homestead is urban and when a homestead is rural. When given the power to implement constitutional provisions, as it has with respect to the homestead laws, "the legislature may define terms which are not defined in the constitution itself, provided its definitions constitute reasonable interpretations of the constitutional language and do not do violence to the plain meaning and intent of the constitutional framers." *Swearingen v. City of Texarkana,* 596 S.W.2d 157, 160 n. 1 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). The definition in section 41.002(c) of the Property Code is a reasonable interpretation of the constitutional language and does not do violence to the intent of the constitutional framers.

It is unclear whether section 41.002(c) applies in all homestead disputes. At the least, the definition of "homestead" in section 41.002(c) applies in cases, like the instant case, involving the threatened foreclosure of homestead property. *See* Debate on Tex.S.B. 642, 71st Leg. (May 1989) (remarks of Sen. Parker) ("A question occurred as to exactly what we meant on homestead on this—in this foreclosure provision and this clarifies the term "homestead.' "). Some language in the legislative history of this section, however, suggests that section 41.002(c) might not displace the traditional common law definition of "homestead" in all cases. Under the traditional analysis, the Texas courts examine several factors to determine whether a homestead is rural or urban: (1) the

Paigebrooke Farm as her homestead, the farm received no utility or other municipal services from the City of Westlake. Therefore, Paigebrooke Farm is a rural homestead, and Bradley is entitled to claim up to two hundred acres as her rural family homestead exemption. *See id.* § 41.002(b)(1).

## III. CONCLUSION

Under Texas law, debtor Bradley is entitled to rural family homestead protection covering all 129.47 acres of Paigebrooke Farm. The judgment of the courts below is reversed and the case is remanded to the district court for further bankruptcy proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

location of the land with respect to the limits of the municipality; (2) the situs of the lot in question; (3) the existence of municipal utilities and services; (4) the use of the lot and adjacent property; and (5) the presence of platted streets, blocks, and the like. *See Vistron Corp. v. Winstead,* 521 S.W.2d 754, 755 (Tex.Civ.App.—Eastland 1975, no writ); *Rockett v. Williams,* 78 S.W.2d 1077, 1078 (Tex.Civ.App.—Dallas 1935, writ dism'd); *Purdy v. Grove,* 35 S.W.2d 1078, 1081–82 (Tex.Civ.App.—Eastland 1931, writ ref'd); *see also* 43 Tex.Jur.3d *Homesteads* § 15 (1985) (and cases cited therein). The availability of municipal utilities and services is merely one factor in this traditional analysis.