**In re James R. & Wilda J. GRISHAM, Debtors.**

No. 398–34156–SAF–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 5, 1998.

Mr. Don T. Cates, Forney, TX, for debtors.

Mr. Charles B. Hendricks, Cavazos, Hendricks, et al., Dallas, TX, for trustee/movant.

Mr. Richard G. Dafoe, Vial, Hamilton, Koch & Knox, Dallas, TX, for Mabank Bank.

Mr. Steven C. Haley, Moorman, Tate, et al., Brenham, TX, for Purina AG Capital Corp.

## *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Bankruptcy Judge.

James and Wilda Grisham, the debtors, claim 80 acres as their rural homestead. James W. Cunningham, their Chapter 7 trustee, Mabank Bank and Purina AG Capital Corp. object to the designation of a rural homestead, contending that the Grishams may only exempt from their bankruptcy estate a one acre urban homestead.[1]

---

1. The trustee had objected to other property claimed as exempt by the Grishams. The parties

The determination of property exempt from a bankruptcy estate constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2) and 1334. The court conducted an evidentiary hearing on October 7, 1998. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

 The Bankruptcy Code provides that, upon commencement of a bankruptcy case, all legal and equitable interests of the debtors in property become part of the bankruptcy estate. 11 U.S.C. § 541; *Matter of Walden,* 12 F.3d 445, 448 (5th Cir.1994). The debtors may, however, exempt certain property from the estate, placing that property beyond the reach of claims of creditors. 11 U.S.C. § 522; *Walden,* 12 F.3d at 448. Once the court has declared the property exempt, it is no longer part of the bankruptcy estate.

 The Code permits the debtors to exempt property under federal or state exemptions. The Grishams have claimed exemptions under the laws of the State of Texas. 11 U.S.C. § 522(b)(2). They claim that under Texas law they may exempt their 80 acres of land as a rural homestead. Tex. Prop.Code Ann. § 41.002(b).

 But the Grishams' land is located partially within the boundaries of a municipality. Texas courts liberally construe the constitutional and statutory provisions that protect homestead exemptions. *Matter of Bradley,* 960 F.2d 502, 507 (5th Cir.1992). But the debtors have not provided Texas authority holding that once the debtors establish a homestead, Texas law liberally presumes one form of homestead in favor of another. Rather, under Texas law, a person may not have both an urban and a rural homestead. *Farrington v. First Nat'l Bank,* 753 S.W.2d 248, 251 (Tex.Civ.App.—Houston [1st Dist.] 1988, writ denied). Nor may a homestead be designated part rural or part urban. *See Mikael v. Equitable Securities Co.,* 32 Tex.Civ.App. 182, 74 S.W. 67, 68 (1903, writ ref'd). The Grishams have the burden of proof of establishing a rural home-

stead under Texas law. *Matter of Bradley,* 960 F.2d at 507. The determination constitutes a question of fact. *Matter of Crowell,* 138 F.3d 1031, 1033 (5th Cir.1998).

The Texas Constitution does not define when property qualifies as a rural or urban homestead. The Texas Legislature has provided, however: "A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection." Tex.Prop.Code Ann. § 41.002(c).

 Under this legislative definition a homestead is rural if these services are not provided. *Matter of Bradley,* 960 F.2d at 511–512 (homestead rural because the municipal services not provided). But the converse does not make the homestead urban. If the municipal services are provided, the statute does not expressly define the homestead as urban. Consequently, if the municipal services are provided at the time the homestead designation is made, the court must consider various factors developed by Texas jurisprudence. *Bradley,* 960 F.2d at 511 n. 18. These factors include the location of the land with regard to the municipality's limits; the situs of the lot in question; the existence of municipal utilities and services; the use of the lot and the adjacent property; and the presence of plotted streets, blocks and the like. *Crowell,* 138 F.3d at 1034.

The Grishams began leasing the 80 acres in 1969. They purchased the 80 acres in 1978. The 80 acres are located partially in the city limits of the City of Mabank, Texas, a town of approximately 1750 people, located 55 miles southeast of Dallas on State Highway 175. Of the 80 acres, 11.74 are within the city limits. The city boundaries included this acreage before the Grishams' acquisition. The Grishams constructed a house on the property in 1979. Apparently, the house is situated mostly, if not completely, on the acreage within the city limits. The Grishams have continuously resided in that house, having raised their family there. The Grishams constructed other buildings on the property, located partially within the city boundaries.

resolved those objections on the record.

The Grishams have used the rest of the acreage to graze cattle and grow wheat and grasses for hay. Just prior to the bankruptcy case, the Grishams had 50 head of cattle grazing on the land. But the heat and drought of the summer of 1998 destroyed their hay crop. The Grishams do not, however, rely on the production of the 80 acres for their livelihood. James Grisham has been involved in a cattle auction business with his son and daughter-in-law.

The Grishams access their house from a platted Mabank street. The property has a designated address of 626 West Market Street, a paved and platted Mabank street. The property is served by the City of Mabank police department and its volunteer fire department. City police and volunteer firefighters would respond to service requests on the portion of the 80 acres outside the city limit as well as provide services to the acres within the city limits. The property is served by water from the City of Mabank, not from a well, and by sewer from the City of Mabank, not by septic tank. The property enjoys the contractual sanitation services arranged by the City of Mabank. City water, sewer and sanitation have been provided since the Grishams acquired the property. The property receives electrical power from Texas Utilities, which serves Mabank, and not by Trinity Valley Electric Coop, which serves other portions of the county. All of these facts have been constant since the Grishams acquired the property. In addition, city-franchised cable services have been available to the property since 1971. The Grishams pay municipal taxes. James Grisham is registered to vote in the city. The postal service delivers mail to the Market Street address and not by a rural route.

Mabank residential property lies to the south of the property. A hamburger stand and a convenience store operate just south of the entrance to the property on Market Street. The acres within the city boundaries have been zoned for residential use. A high school lies to the west of the property. The school district's boundaries exceed the city's boundaries. The school district has inquired about purchasing the property. A parcel of land, similar to the Grishams' property but undeveloped, lies to the immediate east of the property. To its east lies a middle school, a residential subdivision and an elderly housing development. State Highway 175 runs to the north of the property. The city annexed the highway's easement a decade ago. But north of the highway, cattle graze and grass grows for miles, with limited exceptions. The city boundaries, however, include a tract of land to the northeast across the highway, zoned for residential use.

Since the property has been continuously served by municipal utilities and fire and police protection, the court must assess the Texas common law factors to determine if the Grishams' homestead qualifies for a rural homestead exemption. Cattle graze and grass grows, to be bailed for hay, on most of the 80 acres and north of the highway for miles. From the backyard of the house looking north, a person visiting the Grishams would observe a rural landscape. Yet the visitor arrived at the Grishams' house from Mabank, on a platted city road to a city street address. And when the visitor bids the Grishams adieu, he will depart back onto that platted city street surrounded to the south by residential development, a convenience store and a hamburger stand. Within minutes, the visitor would be in downtown Mabank.

The property is located partially within the municipal limits. Although not definitively established without a survey, the house itself apparently lies within the municipal limits. The Grishams reside in the house and raised their family on the land, but have not used the land for their livelihood. Although they have grazed cattle and bailed hay for feed, they have earned their livelihood from other endeavors at other locations. Although not dispositive, use of the land for purposes other than a residence is a factor to consider. They have not farmed or ranched the land for their livelihood. City services are provided to the property. The Grishams pay municipal taxes and Mr. Grisham votes in municipal elections. The house fronts to the city, such that the postal service delivers mail by a street address, not by a rural route. The city has zoned the acreage within the city boundaries for residential use.

■ The debtors have not met their burden of proof to establish a rural homestead. The factors weigh to an urban homestead. The location of 11.74 acres within the city boundaries, the situs of the house, the existence of municipal utilities and services, the presence of platted streets and residential blocks with a municipal address and municipal postal route, and the use of the property primarily for residential as opposed to farming or ranching, the cattle grazing and grass for hay-growing notwithstanding, weigh in favor of an urban homestead. *See Crowell,* urban homestead found where debtor grazed cattle on his 40 acres, served by city utilities and surrounded by a municipality platted for residential use. Although the Grishams' land is not completely surrounded by the municipality, unless the highway easement is considered, *Crowell* is instructive.

■ The court recognizes the impact of this decision on the administration of this bankruptcy case. The Grishams may retain as their homestead, exempt from this bankruptcy estate, one acre of land, which will include their house. The bankruptcy estate will include the remaining 79 acres, which may be sold to generate a dividend for the Grishams' creditors. Had the Grishams prevailed, the bankruptcy estate would have had little if any assets to be liquidated for creditors. While recognizing this result, the effect on the Grishams' creditors is not a consideration for determining whether the Grishams maintained a rural homestead under Texas law.

Based on the foregoing,

**IT IS ORDERED** that the objections to the exemption of a rural homestead are **SUSTAINED.**

**IT IS FURTHER ORDERED** that James R. Grisham and Wilda J. Grisham may designate within 60 days of the date of the entry of this order a one acre urban homestead out of the subject property, the remainder of which shall remain property of their bankruptcy estate.