REVISED MARCH 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50449
_____

In the Matter of: DENNIS RAY BOUCHIE; SHERRI BOUCHIE,

Debtors.

------------------

RUSH TRUCK CENTERS OF TEXAS L.P.; HELEN G. SCHWARTZ, Trustee,

Appellants,

versus

DENNIS RAY BOUCHIE, doing business as
Mission Truck Repair, formerly known as Trinity Vision
Transportation; SHERRI BOUCHIE, also known as Sherri L. Griffin,

Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

_____

March 17, 2003

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:

Appellants Rush Truck Centers of Texas, L.P. and Helen G. Schwartz, Trustee (collectively "Rush Truck") challenge the bankruptcy court's finding (as affirmed by the district court) that 84.557 acres of land owned by debtors-appellees Dennis and Sherri Bouchie (collectively "Bouchie") is a rural homestead under Texas law and thus exempt from the bankruptcy estate. Based on the

factors plainly articulated by Texas law for differentiating between rural and urban homesteads, we affirm.[1]

## I.  FACTS AND PROCEEDINGS

The bankruptcy court found that Bouchie's property is a rural homestead under Tex. Prop. Code 41.002(c).  This statute[2] states that:

> (c)  A homestead is considered to be urban if, at the time of designation is made, the property is:
> (1)  located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
> (2)  served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality
> (A)  electric;
> (B)  natural gas;
> (C)  sewer;
> (D)  storm sewer; and
> (E)  water.

The bankruptcy court held that the property is within the extraterritorial jurisdiction of Converse, Texas; that it is served by police protection and fire protection; but that it is not provided at least three of the listed services by a municipality, as required by the express language of the statute.  Thus, as the bankruptcy court concluded, Bouchie's property is a rural homestead.  The district court affirmed.

---

[1] See Tex. Prop. Code § 41.002(c) (2000).

[2] Id.

2

II.  ANALYSIS

A.  Standard of Review.

Whether a homestead is urban or rural is a question of fact.[3] The bankruptcy court's findings of fact are subject to clearly erroneous review and its conclusions of law receive de novo review.[4]  A finding of fact premised on an incorrect legal standard, however, loses the protection of the clearly erroneous rule.[5]

B.  Determination of Rural or Urban.

1.  Currently Applicable Test.

Rush Truck first challenges the district court's characterization of Bouchie's property as a rural homestead based on the district court's sole application of Tex. Prop. Code § 41.002(c).[6]  The bankruptcy court did not apply the "multiple

---

[3] Crowell v. Theodore Bender Accounting, Inc., 138 F.3d 1031, 1033 (5th Cir. 1998).

[4] Id.

[5] Southland Corp. v. Toronto-Dominion, 160 F.3d 1054, 1057 (5th Cir. 1998).

[6] Rush Truck also argues that the bankruptcy court erred in its determination that Bouchie's property was not provided with sewer services by a municipality or under contract to a municipality.  As Rush Truck did not present this argument to the district court, we will not consider it on appeal.  Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc). See also United States v. Olson, 4 F.3d 562, 567 (8th Cir. 1993) (holding that a party waives an argument considered by the bankruptcy court if he does not reassert the argument on appeal to the district court).

3

factors" test adopted in <u>United States v. Blakeman</u>.[7] <u>Blakeman</u>'s applicability in light of the 1999 amendments of section 41.002(c) is a question of first impression for this court.[8]

The bankruptcy court in the instant case applied the approach it had previously developed in <u>In re Perry</u>.[9] In that case, the bankruptcy court concluded that the question whether a homestead is rural or urban is answered by <u>first</u> applying section 41.002(c).[10] Under <u>Perry</u>, if the homestead does not qualify as urban under the statute, it is rural and the inquiry ends.[11] If, however, the homestead meets the statutory definition of "urban," then the court continues with its analysis by applying the <u>Blakeman</u> five-factor test.[12] The bankruptcy court in the instant case held that Bouchie's property did not meet the statutory definition of "urban" and thus classified it as rural, ending its inquiry.

To determine whether the <u>Blakeman</u> test is applicable in light of the 1999 amendment to section 41.002(c), it is useful to summarize briefly its origins. Prior to 1989, a homestead was characterized as urban or rural by applying a five-factor test

---

[7] <u>United States v. Blakeman</u>, 997 F.2d 1084 (5th Cir. 1992).

[8] <u>See</u> Act of June 19, 1999, 76th Leg., R.S., ch. 1510, § 2, 1999 Tex. Gen. Laws 5232 (amending Tex. Prop. Code § 41.002(c)).

[9] 267 B.R. 759 (Bankr. W.D. Tex. 2001).

[10] <u>Id.</u> at 766.

[11] <u>Id.</u>

[12] <u>Id.</u>

4

developed by the Texas courts.[13]  The factors that the courts considered included "(1) the location of the land with respect to the limits of the municipality; (2) the situs of the land in question; (3) the existence of municipal utilities and services; (4) the use of the lot and adjacent property; and (5) the presence of platted streets, blocks and the like."[14]

In 1989, the Texas legislature enacted section 41.002(c).[15] As enacted, section 41.002(c) stated that "[a] homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection."[16]  In Bradley, we held that a homestead that is not served by municipal utilities, fire, and police protection is rural under section 41.002(c) as it was then written.[17]  We left the question open, however, whether section 41.002(c) provided the exclusive test for making the rural/urban determination or whether

---

[13] Blakeman, 997 F.2d at 1091.

[14] Id. at 1091 n.14 (quoting In re Bradley, 960 F.2d 502, 511-12 n.18 (5th Cir. 1992) (citing Vitron Corp. v. Winstead, 521 S.W.2d 754, 755 (Tex. Civ. App. -- Eastland 1975, no writ); Rockett v. Williams, 78 S.W.2d 1077, 1078 (Tex. Civ. App. -- Dallas 1935, writ dism'd); Purdy v. Grove, 35 S.W.2d 1078, 1081-82 (Tex. Civ. App. -- Eastland 1931, writ ref'd); 43 Tex. Jur. 3d Homesteads § 15 (1985))).

[15] Bradley, 960 F.2d at 511-12 n.18.

[16] Id. at 511 (quoting Act of June 14, 1989, 71st Leg., R.S., ch. 391, § 2, 1989 Tex. Gen. Laws 1519, amended by, Act of June 19, 1999, 76th Leg., R.S., ch. 1510, § 2, 1999 Tex. Gen. Laws 5232).

[17] Id. at 511-12.

it was but a factor to consider.[18] We indicated, nevertheless, that the legislative history suggested that section 41.002(c) "might not displace the traditional common law definition of 'homestead' in all cases."[19]

We answered that question in <u>Blakeman</u>, ruling that the 1989 version of section 41.002(c) is not "the exclusive test to determine whether a property's homestead status: it is but one factor a court considers to determine whether a court considers to determine whether the homestead is urban or rural."[20] We thus held that section 41.002(c) did not overturn the common law five-factor test.[21] We then determined on the facts in <u>Blakeman</u> that the property at issue constituted a rural homestead, despite the fact that it was served by municipal utilities or fire and police protection.[22]

In 1999, the Texas legislature substantially rewrote section 41.002(c) in its current form, as quoted above. Unlike the previous version of the section, the current version provides a detailed framework for determining when a property is "urban" and substantially incorporates the factors included in the traditional

---

[18] <u>Id.</u> at 511-12 n.18.

[19] <u>Id.</u>

[20] <u>Blakeman</u>, 997 F.2d at 1091.

[21] <u>See</u> <u>id.</u>

[22] <u>Id.</u>

test. Like its predecessor version, however, section 41.002(c) does not explicitly state that it is the exclusive test for whether a homestead is urban or rural.

At this point, the canons of statutory construction come to bear. "A 'statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'"[23] Our holding in <u>Blakeman</u> that section 41.002(c) was not the exclusive test for determining homestead status pre-dated the Texas legislature's amendment of section 41.002(c) by seven years. Thus, at first glance, the fact that the amended version does not state that section 41.002(c) supplies the exclusive test suggests that the legislature did not intend to displace <u>Blakeman</u>. As we explain below, however, the Texas legislature did incorporate part of the <u>Blakeman</u> test into the current version of the statute. Under the well-known canon <u>inclusio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u>, this indicates that the legislature intentionally excluded the other factors from the rural/urban determination. This latter inference is more consistent with the other evidence that section 41.002(c) in its current form leaves no room for the <u>Blakeman</u> test.

Another fundamental principle of statutory interpretation holds that "[w]hen the legislature amends a law, it is presumed

---

[23] <u>Wichita County v. Hart</u>, 917 S.W.2d 779, 782 (Tex. 1996) (<u>quoting</u> <u>Acker v. Texas Water Comm'n</u>, 790 S.W.2d 299, 301 (Tex. 1990)).

that it intends to change the law."[24] This canon of interpretation suggests that the Texas legislature, by substantially amending section 41.002(c), intended to change the test for determining which homesteads are urban and which are rural.

In the framework of these interpretive rules, we conclude that the <u>Blakeman</u> approach did not survive the 1999 amendment to section 41.002(c). In amending section 41.002, the legislature created a detailed scheme for determining which homesteads are to be considered urban. If courts continued to graft the common law test on to this statute, they would fundamentally rewrite it and, in effect, would defeat the legislature's ability to change the state of the law by statutory amendment. Further, applying <u>Blakeman</u> to section 41.002(c) as amended in 1999 is inappropriate in light of the legislature's deliberately including some of the <u>Blakeman</u> factors in the amendment and excluding others. The legislature included two of the <u>Blakeman</u> factors in the statute: Location of the property with respect to municipal limits and whether the land is platted.[25] In addition, the statute refers to a third <u>Blakeman</u> factor — the existence of municipal utilities and services — which was part of the predecessor statute.[26] Under the <u>expressio</u>

---

[24] <u>Buckner Glass & Mirror, Inc. v. T.A. Pritchard Co.</u>, 697 S.W.2d 712, 714 (Tex. App. — Corpus Christi 1985, no writ) (<u>citing</u> <u>Amer. Surety Co. of New York v. Axtell Co.</u>, 120 Tex. 166, 177-78, 36 S.W.2d 715, 719 (1931)).

[25] Tex. Prop. Code § 41.002(c).

[26] <u>Id.</u>

8

_unius_ maxim, the decision to include three of the _Blakeman_ factors but not the others must be construed to prohibit the extra-statutory consideration of those other factors.[27]

Finally, in construing any statute, a court's primary goal is to give effect to the legislature's intent.[28] The purpose of the 1999 amendment was to provide more certainty to lenders and to municipal taxing authorities as to the homestead character of land.[29] Continuing to apply the _Blakeman_ factors in addition to the detailed definition provided by the statute would frustrate this purpose. The legislature went as far as to weigh how many services a municipality must provide (assuming other predicate conditions are met) for a homestead to be urban.[30] Courts should not preempt this balancing by reweighing or adding factors.

Our interpretation of the statute today is consistent with that of a noted scholar of Texas property law. Professor McKnight states that, unlike the 1989 version of section 41.002 which defined some homesteads as rural without stating that all other homesteads were necessarily urban, the 1999 amendment states

---

[27] _See_ _Rodriguez v. State_, 953 S.W.2d 342, 354 (Tex. App. —— Austin 1997, pet. ref'd).

[28] _In re Canales_, 52 S.W.3d 698, 702 (Tex. 2001) (_citing_ Tex. Gov't Code § 312.005 (2000)).

[29] Joseph W. McKnight, _Family Law: Husband and Wife_, 55 SMU. L. Rev. 1035, 1053 (2002).

[30] _See_ Tex. Prop. Code § 41.002(c)(2) (a municipality must provide three of six listed services in order for property to be considered urban).

expressly which homesteads are urban and which are rural.[31]  "Under the statutory amendments . . . , availability of [the enumerated] services within a municipality makes the homestead urban, but lack of amenities allows the rural character of the homestead to be maintained."[32]

Having concluded that the Blakeman approach can no longer be used to distinguish between rural and urban homesteads, we cannot endorse the Perry approach crafted by the bankruptcy court.  Under Perry's bifurcated approach, a bankruptcy court could determine that a homestead that is "urban" within the express terms of the amended section 41.002(c) is, nevertheless, not urban based on non-statutory common law factors.[33]  This cannot be correct.  Perry may have been designed to accommodate Blakeman with the amended statute, but our dispensing with Blakeman removes the need to make such an accommodation.  The amended statute is the exclusive vehicle for distinguishing between rural and urban homesteads.

2.   Use of the Property.

Rush Truck also argues that even if Bouchie's property is not urban, as defined within section 41.002(c), it still should not receive the benefit of the homestead exemption because the property is not "used for the purposes of a rural home" as required by Tex.

---

[31] Joseph W. McKnight, Family Law: Husband and Wife, supra, at 1026.

[32] Id. (footnotes omitted).

[33] Perry, 267 B.R. at 766-67.

Prop. Code § 41.002(b) (2000).  Rush Truck does not challenge the bankruptcy court's finding that the Bouchie's use the property as their home.  Rather, Rush Truck contends that the bankruptcy court erred in not requiring Bouchie to show that the land is used for rural purposes.

Rush Truck is correct only to the extent that the bankruptcy court was required to determine that Bouchie intended to use their property as a rural home.  Rush Truck goes further, however, contending that there must also be a showing that the land around the home is used for support of the family.  Rush Truck relies primarily on the bankruptcy court's decision in In re Spencer,[34] which held that a property owner seeking to take advantage of the rural homestead exemption must demonstrate that the land is used for agricultural or other rural economic activity to support the family.  We disagree with Rush Truck and with the Spencer decision as well.  To date, Spencer remains an outlier, and its analysis of the homestead exemption has not been adopted by other bankruptcy judges in the Western District of Texas.[35]  We agree with the reasoning in Mitchell: Under Texas homestead law, all that is

---

[34] 109 B.R. 715 (Bankr. W.D. Tex. 1989).

[35] See In re Mitchell, 132 B.R. 553 (Bankr. W.D. Tex. 1991). See also Painewebber, Inc. v. Murray, 260 B.R. 815, 829 (E.D. Tex. 2001) (noting that Spencer is the only bankruptcy case that focuses on the "means of livelihood" in determining a rural homestead).

11

required for rural homestead purposes is that the property be used as a home.[36]

    3.   <u>Severance of the Property</u>.

Rush Truck alternatively suggests that Bouchie effectively severed the property into two separate tracts by taking out a mortgage on only 15 of the 84.557 acres, and that the unmortgaged portion of the property is thus part of the homestead only if Bouchie can show that they used it to support their home on the fifteen acres. As Rush Truck cites no authority for this proposition, it is not adequately briefed and is therefore waived.[37]

## III. CONCLUSION

The Texas legislature in 1999 enacted a detailed test for classifying homesteads as urban or rural. It is not the place of the courts to redefine urban and rural homesteads under the guise of applying extraneous common law factors when the legislature has told us which factors to apply. Additionally, for a rural homestead to qualify for the homestead exemption, it need only be used as a home. No more is required. The bankruptcy court was correct in exempting Bouchie's homestead. For the foregoing

---

[36] <u>Id</u>. at 559. <u>See also</u> <u>Posey v. Bass</u>, 77 Tex. 512, 514, 14 S.W. 156 (1890) (stating that "[i]t is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country, it is a rural homestead"); <u>Franklin v. Coffee</u>, 18 Tex. 413 (1857) (allowing homestead protection when evidence showed that property was used as home and no evidence property was being used for economic support).

[37] <u>L&A Contracting Co. v. Southern Concrete Servs.</u>, 17 F.3d 106, 113 (5th Cir. 1994) (waiver for failing to cite authority).

12

reasons, we affirm the judgment of the bankruptcy court as previously affirmed by the district court.

AFFIRMED.