United States Court of Appeals,

Fifth Circuit.

No. 96-10565

(Summary Calendar).

In the Matter of Vance DUNHAM, Debtor.

TEXAS TRUCK INSURANCE AGENCY, INC., Appellant,

v.

Harry CURE, Chapter 7 Trustee for Vance G. Dunham, Debtor, Appellee.

April 17, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

In this core bankruptcy proceeding, Appellant Texas Truck Insurance Agency, Inc. (Texas Truck) appeals the decision of the district court affirming the bankruptcy court's order that granted the trustee's avoidance of a transfer to Texas Truck as fraudulent, pursuant to 11 U.S.C. § 548(a)(2), and ordered Texas Truck to return $160,000 to the bankrupt estate. Finding no clear error in the bankruptcy court's determination that the debtor's transfer was made for less than a reasonably equivalent value, we affirm.

I

FACTS AND PROCEEDINGS

Debtor Vance Dunham (Dunham) and his wife, now Linda Halyburton (Linda), founded the Dunham Insurance Agency (DIA), a sole proprietorship, in 1986. By 1992, however, the Dunhams were

1

contemplating a divorce. Dunham met with Frank Brown of Texas Truck, also an insurance agency, to discuss a possible merger of DIA with Texas Truck. At Brown's recommendation and in accordance with an agreement drafted by Brown, Linda transferred to Dunham her one-half community interest in DIA for the stated consideration of $15,000. The agreement acknowledged that Dunham was contemplating the sale of DIA's assets to Texas Truck and, in a non-competition provision, prohibited Linda from soliciting the customers or accounts of DIA.

The next month, Dunham entered two agreements with Texas Truck: (1) the Servicing Agreement and (2) the Employment Agreement. The Servicing Agreement provided that Texas Truck would act as the servicing agent for the insurance "book of business"[1] of DIA. Specifically, Texas Truck agreed to (1) collect the sums due on DIA insurance policies written before the effective date of the Servicing Agreement, (2) service the accounts, and (3) allocate and pay to DIA's creditors the commissions earned on the existing book of business.

The Employment Agreement hired Dunham to solicit and sell insurance for Texas Truck and prohibited him from engaging in any

---

[1]The "book of business," also known as "expirations" or "renewals," has a definite and well recognized meaning in the insurance industry. "[I]t embodies the records of an insurance agency.... This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements." *John Bezdek Insurance Associates, Inc. v. American Indemnity Co.,* 834 S.W.2d 401, 404 (Tex.Ct.App.-San Antonio 1992)(quoting *In re Corning,* 108 A.D.2d 96, 488 N.Y.S.2d 477 (N.Y.App.Div.1985)).

other business or occupation without its written permission. Dunham acknowledged that all renewals, expirations, books, records, notes, files, customer lists, and similar data and information were the property of Texas Truck and would remain its property even if Dunham's employment were terminated for any reason. Dunham also transferred to Texas Truck his exclusive right to contact his former customers for the three years following the termination of his employment.

Eight months later, Dunham filed a voluntary Chapter 7 bankruptcy petition. Harry Cure (Trustee), trustee of Dunham's bankrupt estate, filed this action against Texas Truck seeking to recover certain property that he alleged had been fraudulently transferred by Dunham, d/b/a DIA, to Texas Truck. The property in question included (1) all furniture, fixtures, and equipment;[2] (2) the telephone number; (3) the customer files and customer lists; (4) the insurance policies; (5) all rights to renew the insurance policies; and (6) all commission income generated from the insurance policies.

At trial, the bankruptcy judge heard testimony from two appraisers concerning the value of the property transferred. The Trustee's expert, Roy L. Phillips, boasted impressive credentials, extensive involvement in the insurance industry, and substantial experience in valuing insurance agency businesses. He is presently

_____

[2]Linda testified at trial that Dunham transferred DIA's furniture and office equipment to Texas Truck. As no written agreement evidenced the transfer, the bankruptcy court speculated that the conveyance was merely oral and noted that the record contained no evidence of the property's value.

the owner of an insurance agency (formed in 1981) and has worked in the industry for thirty-four years. He serves on the boards of several insurance organizations and has taught in the insurance department at the University of Houston for twelve years. More significantly, he has written numerous articles on insurance agency valuation, appraised thirty-two insurance agencies, and developed his own method for valuing insurance companies.

Phillips opined that the value of the book of business ---- the books, records, expirations or renewals, and other documents ---- was approximately $200,000. Phillips based his opinion on actual documentation from the books and records of DIA, including its tax returns and its financial statement for the year preceding the transfer to Texas Truck, as well as the testimony of DIA employees with first-hand knowledge of DIA's financial condition. He also considered the Service Agreement, the Employment Agreement, the non-competition clauses, and the benefits of the economies of scale enjoyed by Texas Truck by virtue of acquiring DIA.

By contrast, the expert hired by Texas Truck, Robert Dohmeyer, was largely inexperienced in both the insurance industry and the valuation of insurance agency businesses. He is not licensed and has never worked in the insurance industry. He has no formal education regarding insurance agency valuation, has not written any articles on valuing insurance agency businesses, and has appraised only two insurance agencies.

Dohmeyer testified that the value of the book of business was $26,000. Dohmeyer assumed a 60% renewal rate and applied a 50%

discount based on the erroneous assumption that no non-competition agreements had been executed. Phillips, on the other hand, assumed a 90-95% renewal rate, based largely on Dunham's future exclusive employment with Texas Truck, and recognized the existence of the two non-competition agreements.

The bankruptcy court determined first that the property transferred to Texas Truck consisted of the property rights and policies of DIA on the effective date of the Service Agreement and the Employment Agreement. Specifically, it stated, "these policies afforded an entree for Dunham or Texas Truck to meet and to sell renewals or other insurance to customers, and there is a bundle of property rights there that was transferred." The court concluded next that Phillips' appraisal was more credible than Dohmeyer's and assigned a $200,000 value to the property transferred. The court then determined that Texas Truck expended $40,000 to acquire the property transferred, arriving at this figure by netting the commissions that Texas Truck earned on DIA policies ($56,000) against the expenses that it paid on behalf of DIA ($76,000) and adding the servicing expenses that Texas Truck incurred ($20,000).

After comparing the value of the property transferred ($200,000) with the value of the consideration given in exchange ($40,000), the court concluded that the transfer was made for less than a reasonably equivalent value and therefore was avoidable by the Trustee. Alternatively, the court found that the transfer was avoidable as one made with actual fraud. The bankruptcy court ordered Texas Truck to return $160,000 to the bankrupt estate, that

5

being the difference between the values of the assets exchanged.

The district court, reviewing for clear error, affirmed the decision of the bankruptcy court and added pre-judgment interest of 4% from April 15, 1994 to the date of judgment and post-judgment interest at the fixed federal rate.

Texas Truck timely appealed, asserting, inter alia, that the district court erred in (1) failing to review the issue of reasonable equivalency de novo, (2) including renewals in the value of the property transferred, (3) determining that the transfer was made for less than a reasonably equivalent value, and (4) determining that the transfer was made with actual fraud.

II

ANALYSIS

A. STANDARD OF REVIEW

There exists some disagreement, both within this circuit and among the circuits, as to whether the ultimate determination of reasonable equivalency is a question of law, subject to our de novo review, or a question of fact, subject to the clearly erroneous standard.[3]  Recently in *In re Fairchild Aircraft Corporation,*[4] we

---

[3]Most of the other circuits have concluded that the issue is one of fact.  *See In re Roco Corp.,* 701 F.2d 978, 982 (1st Cir.1983)(factual issue to be reviewed for clear error); *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979)(fairness of consideration is generally a question of fact); *In re Barefoot,* 952 F.2d 795, 800 (4th Cir.1991)(factual determination which can be set aside only if clearly erroneous); *In re Bundles,* 856 F.2d 815, 825 (7th Cir.1988)(great deference to the district court); *In re Ozark Restaurant Equip.  Co., Inc.,* 850 F.2d 342, 344 (8th Cir.1988)(question of fact reversible only if clearly erroneous); *In re Wes Dor, Inc.,* 996 F.2d 237 (10th Cir.1993)(suggesting fact question);  and *In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990)(fair consideration is largely a question of fact).

applied a de novo standard of review, following our previous decision in *Durrett v. Washington National Insurance Company*.[5] In both cases, however, we noted that the result would have been the same regardless of whether we applied the de novo or the clear error standard. Later in *In re Besing*,[6] even though we declined to resolve the issue,[7] we recognized that the reasonable equivalency inquiry is ordinarily fact-intensive, as the court bases its determination upon subsidiary fact findings regarding the value of the property transferred and the value received in the exchange.[8]

Long before we decided any of these cases, however, we verbalized the proper standard of review. In *Mayo v. Pioneer Bank*

---

*But see In re Prejean,* 994 F.2d 706, 708 (9th Cir.1993)(de novo review).

[4]6 F.3d 1119 (5th Cir.1993).

[5]621 F.2d 201, 203 (5th Cir.1980)(reviewing the question of reasonable equivalency de novo). Our decision in *In re Coston,* 991 F.2d 257 (5th Cir.1993)(en banc), calls into doubt the continued soundness of *Durrett.* In *Coston,* we held that the question of the reasonableness of a creditor's reliance is one of fact, which is reviewable only for clear error. Deferring to the bankruptcy judge, who is most familiar with the circumstances surrounding the inquiry and who has had the opportunity to evaluate the credibility of the witnesses, we concluded that the bankruptcy judge should have the benefit of the clearly erroneous rule when he determines a question of reasonableness. The considerations in *Coston* apply with equal force to the instant inquiry and implicitly weaken *Durrett* 's application of the de novo standard to the question of reasonableness.

[6]981 F.2d 1488 (5th Cir.), *cert. denied,* 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993).

[7]*Id.* at 1495 n. 12.

[8]*Id.* at 1495 (citing *In re McConnell,* 934 F.2d 662 (5th Cir.1991); *In re Emerald Oil Co.,* 807 F.2d 1234 (5th Cir.1987)).

7

& *Trust Company,*[9] we stated that the question of "[w]hether fair consideration [now "reasonably equivalent value'] has been given for a transfer is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.' "[10]

When these opinions are carefully analyzed against this backdrop, we are led to the conclusion that the clearly erroneous standard is proper.[11] Thus we join the majority of the circuits in embracing that standard.

B. REASONABLY EQUIVALENT VALUE

As such, the issue in the instant case is whether the bankruptcy court clearly erred in accepting the appraisal of the more credible expert and determining on the basis of that appraisal that the transfer was made for less than a reasonably equivalent

---

[9]270 F.2d 823 (5th Cir.1959), *cert. denied,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960).

[10]*Id.* at 829-30 (quoting Collier's Bankruptcy Manual (Oglebay, Kelliher and Newkirk)(1948), p. 845). *Mayo* 's conclusion on this point was not discussed by *Durrett* or any other Fifth Circuit case.

[11]We recognize, however, that the clearly erroneous standard is subject to modification if the bankruptcy court invokes improper methodology in reaching its conclusion on the issue of reasonable equivalency. Consequently, we review de novo the methodology employed by the bankruptcy court in assigning values to the property transferred and the consideration received.

In the instant case, the methodology employed by the bankruptcy court was appropriate. The bankruptcy court heard testimony, on direct and cross-examination, from each party's expert appraiser as to his credentials, opinion of the proper valuation, considerations, assumptions, and sources of information. Texas Truck does not challenge the methodology of the bankruptcy court.

value.  We conclude that the bankruptcy court did not err.

The bankruptcy court accorded great weight and probative value to the testimony of the highly qualified and credible appraiser, Phillips, and attributed little or no probative value to the appraisal of the largely inexperienced appraiser, Dohmeyer.  We find no clear error in this call by the bankruptcy court.

Texas Truck does not challenge this decision;  instead, it insists that the bankruptcy court erred in including the value of renewals in the value of the property transferred, as they were either the non-transferrable personal goodwill of Dunham or mere expectancies, which are not property.  We disagree.  Renewals are clearly property, and they are a transferrable asset of an insurance agency.[12]  Texas Truck introduced no evidence that renewals could not be considered in appraising the value of the book of business.  Indeed, Texas Truck's own expert included renewals in his valuation ---- albeit at a discount rate significantly greater than that assumed by Phillips ---- and he admitted that the renewal rate was the single most important factor in a comparison of his analysis and Phillips'.  Thus the bankruptcy

---

[12]*See John Bezdek Insurance Associates, Inc. v. American Indemnity Co.,* 834 S.W.2d 401, 404 (Tex.App.-San Antonio 1992, no writ)("It has been determined that [the book of business] is of vital assistance to the insurer ... in carrying on the insurance business and it is recognized in the insurance field as a valuable asset in the nature of goodwill.") (citations omitted); *Alexander v. Edwards-Northcutt-Locke,* 329 S.W.2d 304, 306 (Tex.Civ.App.-Dallas 1959, no writ)("This Court has held that an asset of an insurance agency which may be sold and conveyed by a seller to a purchaser is the right in and to expirations of all policies written by the seller, and also an asset is the right to control and solicit renewals of all policies written by the seller.") (citations omitted).

court did not clearly err in accepting Phillips' appraisal which included the value of renewals.[13]

Texas Truck also argues that the bankruptcy court, in determining the value of the consideration given, ignored the $56,000 in commissions earned on DIA policies and paid to DIA's creditors. As the bankruptcy court clearly accounted for this income in calculating Texas Truck's cost to acquire DIA, Texas Truck cannot now be heard to complain on this point.

As we have concluded that the values assigned by the bankruptcy court to the property transferred and the consideration received are not clearly erroneous and that the court did not clearly err in determining that the transfer was made for less than a reasonably equivalent value, all that remains to be done is a simple arithmetic calculation to determine the amount, if any, that Texas Truck owes to the bankrupt estate. Our calculation is identical to the one performed by the bankruptcy court and affirmed by the district court. Consequently, Texas Truck must return to the bankrupt estate $160,000 plus pre-judgment interest at the rate of 4% per annum from April 15, 1994 to the date of this judgment and post-judgment interest at the fixed federal rate.

Concluding that the transfer is avoidable as one made for less than a reasonably equivalent value, we need not address whether the transfer is avoidable on the alternative ground that it was actual fraud.

---

[13]Whether the value of renewals is subject to a discount is a separate question and one which Texas Truck did not raise.

### III

### CONCLUSION

For the foregoing reasons, we affirm the decision of the district court ordering Texas Truck to return $160,000 plus interest to the bankrupt estate.

AFFIRMED.