**William G. HAYS, Jr., Receiver and Disbursing Agent on Behalf of the Debtors,**

v.

**JIMMY SWAGGART MINISTRIES, et al.**

**No. CIV.A. 95–2030–B–M2.**

United States District Court, M.D. Louisiana.

Feb. 4, 1999.

204

John Leroy Glover, John Ashley Moore, Fredrick R. Tulley, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, David John Messina, Taylor, Porter, Brooks & Phillips, New Orleans, LA, for William G. Hays, Jr.

Barry W. Miller, Steven E. Adams, Baton Rouge, LA, for Jimmy Swaggart Ministries.

John C. Anderson, Chehardy, Sherman, Ellis, Breslin & Murray, Baton, Rouge, LA, for Power Malls of America, Jimmie C. Thompson.

George B. Russell, Baton Rouge, LA, pro se.

### RULING

POLOZOLA, Chief Judge.

William G. Hays, Jr. ("Hays"), the trustee of the bankruptcy estate, appeals the ruling of the bankruptcy court which denied the receiver's claims under 11 U.S.C. §§ 548(a)(1), (a)(2), (c), and 544(b). For reasons which follow, the decision of the Bankruptcy Judge is hereby reversed.

### I. FACTS

Hays brought this action against Jimmy Swaggart Ministries ("JSM") to recover funds paid to JSM by the debtors.[1] The bankruptcy court's memorandum opinion of September 7, 1995 sets forth the facts of this proceeding in great detail. Briefly restated and summarized, the relevant facts are as follows. The debtors in this matter were improperly raising capital to fund a shopping mall development project in violation of state and federal securities laws. In order to develop the mall, the debtors needed to purchase certain land owned by "JSM". In order to secure the

---

1. Sam J. Recile, the principal behind the development plan, formed and used various corporations in this scheme, and the corporations will be collectively referred to by this Court as the debtors.

property for purchase, the debtors, through various corporations, negotiated a series of options and agreements to purchase land owned by JSM. The debtors made numerous, substantial payments to JSM in order to "tie up" the property while the debtors tried to arrange financing. On several occasions, the parties were to execute acts of sale, but these meetings were either cancelled or did not take place. At times, the debtors made large daily payments, many in cash, which ranged from $7,500 to $25,000 to maintain an option to purchase. No sale was ever completed between the debtors and JSM. During these negotiations between JSM and the debtors and while some of the options were pending and daily cash payments were being paid to JSM, JSM actively sought other purchasers.

The debtors then filed for bankruptcy. The receiver sought to avoid the payments made to JSM by the debtors and bring the payments back into the bankruptcy estate.

The bankruptcy court ultimately found in favor of JSM and against the receiver on all claims.[2]

## II. STANDARD OF REVIEW

Generally, findings of fact made by the bankruptcy judge are reviewed under the clearly erroneous standard.[3] Factual determinations should only be overturned if, after a full review of the record, the Court is "left with a 'firm and definite conviction' that the bankruptcy court committed a mistake."[4] The legal conclusions of the bankruptcy court are reviewed un-

der the less deferential de novo standard.[5] If, however, the bankruptcy court "premises a finding of fact upon an improper legal standard, the finding of fact 'loses the insulation of the clearly erroneous rule.'"[6] As the Fifth Circuit has stated, the clearly erroneous standard "is subject to modification if the bankruptcy court invokes improper methodology in reaching its conclusion."[7] The Court will discuss each of the claims at issue on this appeal.

## III. ANALYSIS

### A. The 11 U.S.C. § 548(a)(1) Claim

The receiver alleges that the estate has the right to recover the payments made to JSM under § 548(a)(1). Section 548(a)(1) provides that:

> The trustee may avoid any transfer of an interest of the debtor in property, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date of that such transfer was made or such obligation was incurred, indebted; ...

To void a transfer and recover funds under § 548(a)(1), the receiver must show that the transfer: (1) is a transfer of the debtor's interest in property; (2) occurred within one year of the filing; and, (3) was made with the actual intent to

---

2. Bankruptcy Court Memorandum Opinion of September 7, 1995, (hereinafter "Memorandum Opinion") p. 30, ¶ 109; Bankruptcy Court Judgment of September 7, 1995.

3. *In re Dunham*, 110 F.3d 286, 289 (5th Cir. 1997); *In re Bradley*, 960 F.2d 502, 507 (5th Cir.1992).

4. *Bradley*, 960 F.2d at 507.

5. *Bradley*, 960 F.2d at 507. (citations omitted).

6. *Bradley*, 960 F.2d at 507 (citations omitted).

7. *Dunham*, 110 F.3d at 289.

hinder, delay, or defraud.[8] The bankruptcy court found that the receiver proved the first two elements, but failed to prove the third element even though the bankruptcy court found as a matter of *fact* that Recile did act with the intent to hinder, delay, and defraud. The Court finds that as a matter of *law,* the receiver did prove that the payments were made with the intent to hinder, delay and defraud under the facts of this case.

██ Whether or not the transfers were made with the "actual intent to hinder, delay or defraud any entity to which the debtor was or became ... indebted" is a legal issue.

Hays argues that the bankruptcy court erred as a matter of law in its finding that Recile lacked the requisite intent to defraud when it made the payments to JSM. The receiver also contends that the bankruptcy court misapplied the law set forth in § 548(a)(1) to the facts found by the bankruptcy court and erroneously required that the transferee have the intent to defraud in accepting the payments. A review of the record reveals that the bankruptcy judge found as a matter of *fact* that "Recile acted with the intent to hinder, delay, and defraud investor/creditors of Hannover/Place Vendome in effecting transfers to JSM".[9] However, the bankruptcy court then erroneously concluded that as a matter of *law* the receiver "failed to prove that the transfers to JSM were made with the intent to hinder, delay, or defraud."[10] In other words, the receiver contends that once the bankruptcy court found the requisite intent to defraud as a matter of fact, it was required, as a matter of law, to find the transfers voidable under § 548(a)(1). The Court agrees.

After reviewing the entire record and the applicable jurisprudence, this Court finds that the bankruptcy court did err as a matter of law in its analysis under § 548(a)(1). In its Findings of Fact, the bankruptcy court found that "Recile acted with the intent to hinder, delay, and defraud investor/creditors of Hannover/Place Vendome in effecting transfers to JSM."[11] However, when the bankruptcy court analyzed the receiver's claim under § 548(a)(1), it apparently required the receiver to prove its claim under a stringent badges of fraud test. The bankruptcy court held that there could be no § 548(a)(1) liability absent proof of a sufficient number of badges of fraud. The bankruptcy court further held that there can be no badges of fraud without proof of fraud by the transferee.[12] This Court disagrees with the bankruptcy court's application of the badges of fraud test.

██ Courts use the badges of fraud test because it is unlikely that a receiver will be able to present adequate direct evidence to establish the debtor's intent to defraud creditors.[13], [14] "Therefore, courts

---

8. The bankruptcy court correctly set forth this standard; Memorandum Opinion, p. 44. See *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248, 1254 (1st Cir.1991).

9. Receiver's Original Brief, rec. doc. no. 4, p. 15, citing Memorandum Opinion, p. 30, ¶ 109.

10. Receiver's Original Brief, Rec. Doc. No. 4, p. 15, citing Memorandum Opinion, p. 49.

11. Memorandum Opinion, p. 30, ¶ 109.

12. Memorandum Opinion, p. 49 and p. 48.

13. *Kelly v. Armstrong,* 141 F.3d 799, 802 (8th Cir.1998); *In re Armstrong,* 217 B.R. 569, 573 (Bkrtcy.E.D.Ark.1998), citing *Brown v. Third National Bank (In re Sherman),* 67 F.3d 1348, 1353 (8th Cir.1995).

14. Fraud or bad faith on the part of the recipient of the transferred interest is not an element of proof. *In re Armstrong,* 217 B.R. 569, 573 (Bkrtcy.E.D.Ark.1998).

look for common indicia ... which have frequently bespoken fraudulent intent in the past."[15] If a confluence of several badges of fraud is established, then the receiver is entitled to a presumption of fraudulent intent.[16] This presumption shifts the burden of proof to the transferee to prove some "legitimate supervening purpose" for the transfers.[17]

In this case, however, the bankruptcy court found as a matter of fact that Recile had the requisite intent to hinder, delay and defraud when he made the transfers. Therefore, the application of the badges of fraud test was unnecessary under the factual findings made by the bankruptcy court. This Court concludes that once the receiver has, as a matter of fact, proven to the bankruptcy court's satisfaction that Recile had the requisite intent, the receiver has proved the third element of § 548(a)(1). This is particularly so under the facts of the case considering the amount and frequency of the daily payments and the manner in which the payments were made by the debtors and received by JSM.

This Court does not reject the badges of fraud tests used by other courts and relied upon by the bankruptcy court. This Court simply does not believe that the five badges of fraud test the bankruptcy court employed is the only means of proving the intent requirement under § 548(a)(1). This is particularly so under the facts of this case because the bankruptcy court found as a matter of fact that the debtors had the requisite fraudulent intent when they made the transfers. Thus, the Court finds that as a matter of fact and law, that

the receiver has proven the third element of § 548(a)(1) and is entitled to recover the funds paid to JSM under this provision.

Because the bankruptcy court failed to apply the correct legal standard to the facts, the Court may also review the factual findings in conjunction with this claim under a de novo standard of review. A full consideration of the record reveals that the facts in evidence fully support a factual finding made by the bankruptcy court that the debtor made the transfers to JSM with the intent to defraud investor/creditors. The primary evidence of this fraudulent conduct is the fact that the transfers were made in the context of a Ponzi scheme. While it is true that Recile needed the money to complete the project, it is also clear that Recile was intentionally defrauding investors to reach that end. Such conduct cannot be condoned by the Court. The receiver has proven its claim under § 548(a)(1).

### B. The § 548(a)(2) Claim

The Court now turns to a consideration of the receiver's claims against JSM under § 548(a)(2). Under § 548(a)(2), a transaction is avoidable if it is (1) a transfer of the debtor's interest in property; (2) made within one year of the filing of the bankruptcy petition; (3) an exchange for which the debtor received less than a reasonably equivalent value; and, (4) made while the debtor was insolvent.[18] The bankruptcy court concluded that the receiver proved all the elements except for the third. In effect, the bankruptcy court found that the receiver failed

---

15. *Id.*

16. *Id.*

17. *Kelly v. Armstrong*, 141 F.3d at 802, citing *In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir.1994).

18. *In re McConnell*, 934 F.2d 662, 664 (5th Cir.1991).

to show that the payments made were not reasonably equivalent to the rights received in return. Thus, the bankruptcy court concluded that money paid JSM was reasonably equivalent to the value the debtor received in keeping the property tied up for over two years.[19] The receiver appeals this finding.

■■■■■■ The test for reasonably equivalent value "is whether the investment conferred an economic benefit on the debtor," and the benefit must be valued as of the time the investment was made.[20] The reasonably equivalent value determination is a question of fact to be reviewed under the clearly erroneous standard.[21] The clearly erroneous standard is, however, subject to modification if the bankruptcy court fails to invoke the proper method of analysis.[22]

The appropriate method of review for reasonably equivalent value is set forth in *In re Fairchild Aircraft Corp.*[23] and *In re R.M.L., Inc.*[24] Under the standards set forth in these cases, the bankruptcy court must first find that the debtor received value as defined in the statute. The court must then consider whether or not the value realized sufficiently constituted reasonably equivalent value.[25]

The receiver contends that the bankruptcy court failed to follow this method of analysis when it reviewed the issue of reasonably equivalent value because: (1) it did not first determine value; and, (2) failed to determine value separately from its determination of reasonably equivalent value. The receiver argues that the inves-

tor/creditors received no value at all for the money the debtors paid to JSM. The receiver contends that at the time these payments were made, there was no chance that the debtors would receive any benefit for the daily payments because there was no chance the project would eventually succeed. JSM disputes this, and contends that the bankruptcy court properly found that as a matter of fact and law, the debtors received real rights reasonably equivalent in value to the payments made.

■■■ To properly resolve this issue, this Court must first determine the appropriate standard of review. To make this determination, the Court must decide if the bankruptcy court employed the proper method of analysis; a review of methodology is de novo.[26] Under the facts of this case, the Court finds that the bankruptcy court failed to use the appropriate methodology in analyzing reasonably equivalent value because the bankruptcy court failed to properly consider value before determining reasonable equivalent value. To determine value correctly, the bankruptcy court must look to see if the benefit received had any economic benefit to the investor/creditors. A review of the voluminous record reveals that the bankruptcy court did not consider whether the rights received had any value to these particular creditors and investors in light of the circumstances at the time the payments were made. Instead, the bankruptcy court found that the rights were, in and of themselves, valuable. However, the bankruptcy

---

**19.** Memorandum Opinion, p. 51.

**20.** *In re Fairchild*, 6 F.3d 1119, 1127 (5th Cir.1993).

**21.** *In re Dunham*, 110 F.3d 286, 289 (5th Cir.1997).

**22.** *Dunham*, 110 F.3d at 289.

**23.** *Fairchild*, 6 F.3d at 1127.

**24.** *In re R.M.L., Inc.*, 92 F.3d 139, 149–50 (3d Cir.1996).

**25.** *Fairchild*, 6 F.3d at 1127; *R.M.L., Inc.*, 92 F.3d at 150.

**26.** *Dunham*, 110 F.3d at 289, n. 11.

court failed to consider the fact that the rights were useless if there was no chance that the project would ever be financed. Since the bankruptcy court did not invoke the proper methodology, the bankruptcy court's factual findings are not insulated by the clearly erroneous rule.[27]

■■■ To determine reasonably equivalent value, the Court must first look to see if the debtor received value, in the form of an economic benefit, for the payments made. To do so, the Court must consider the circumstances that existed at the time and determine if "there was any chance that the investment would generate a positive return." [28] If there was no such chance at the time of the transfers that the payments would generate a positive return, then no value was conferred within the meaning of § 548(a)(2).

A thorough review of the record reveals that at the time the payments were made by the debtors to JSM, there was no chance that a sale would actually occur. The payments in cash or otherwise were made to JSM, but there was simply no way under the facts of this case that the debtors could put the financing together to make the sale happen. This is not to say that Recile did not believe that he could make the deal come together. Nor does this Court conclude that another group of investors could not have successfully developed the property. It is, however, clear from the facts of this case that this project had no chance of success and the rights received by the debtors conferred no benefits on the investor/creditors. Since no value was received in exchange for these payments, all four elements of § 548(a)(2) were met. Thus, this Court must conclude

as a matter of fact and law that the transaction is avoidable.

■■■ Even if the Court were to find that the rights had any value, the facts clearly indicate that the rights were not reasonably equivalent in value to the payments received. The bankruptcy court concluded that the agreements successfully tied up the property for over two years. A de novo review of the facts[29] reveals that the property was not truly tied up because JSM could easily get out of the agreement with little notice or other complications.

## C. JSM'S Defense Under § 548(c)

Even though the bankruptcy court found the transactions were not voidable under § 548(a), it considered the "good faith" defense JSM would have made under 11 U.S.C. § 548(c) if the receiver had proven his claims. Since this Court has found the transactions voidable under § 548(a), it must review the bankruptcy court's conclusions on this defense.

■■■ Section 548(c) provides that an initial transferee who takes for value and in good faith may retain an interest transferred to the extent that the transferee gave value to the debtor in exchange for such transfer or obligation. The key determination here is whether JSM (1) was in good faith when it took the payments; and, (2) gave value in exchange for the payments. JSM has the burden of proving good faith and value under § 548(c).

The bankruptcy court found that JSM proved it was in good faith when it received the transfers from the debtors and also proved that it gave value. The trial court concluded that Recile was a very

---

27. *In re Bradley,* 960 F.2d 502, 507 (5th Cir. 1992).

28. *R.M.L., Inc.,* 92 F.3d at 152.

29. De novo review is appropriate here as the bankruptcy court misapplied the legal standard to the facts.

effective salesman who convinced JSM to tie up its property for two years.

 Good faith is determined on a case-by-case basis using an objective standard of what the transferee knew or should have known.[30] Specifically, the inquiry is whether the transferee had knowledge of the debtor's insolvency.[31] The Court will review these findings of fact under the clearly erroneous standard.

 A review of the facts in this case reveals that JSM did indeed have notice of the debtor's insolvency. The facts of this case reveal that JSM had knowledge of the debtors fraud and JSM'S knowledge of the fraud can only lead this Court to conclude that JSM also knew that the debtor was insolvent. To reach any other conclusion would cause this Court to ignore the facts of this case. Thus, this Court concludes JSM was on notice of the debtors insolvency and was not in good faith at the time it received the payments.

Furthermore, the circumstances surrounding the transactions were highly suspicious, and were sufficient to put JSM on notice that the debtors were possibly involved in fraudulent activity or were possibly insolvent. JSM cannot be allowed to extend its hand while closing its eyes and mind to what was really happening at the time the payments were made and received. The record shows that Clyde Fuller, who was negotiating with Recile on behalf of JSM, knew of the SEC investigation and knew that it involved allegations of fraud. JSM never looked into the debtors' ability to actually pay for the property and the evidence reveals that JSM knew that it was unlikely the project would ever be funded. Fuller admitted that he sus-pected wrongdoing when he stated that Recile "looked like he was guilty." [32] The daily payments made to JSM were in and of themselves suspicious because they were often in cash or were checks signed over from a third party. It is clear the debtors were not able to produce checks on their own accounts. Additionally, the numerous changes of corporations by the debtors should have indicated and put JSM on notice that there was a problem. The evidence further shows that as Fuller began to demand that JSM step away from the deal, he was shut out of the negotiations. The circumstances surrounding the Power Malls option were also highly suspicious. The evidence clearly shows that JSM did not accept the payments with a good faith belief that the project was legitimate. JSM may have honestly hoped that the deal would come to pass, but it must or should have known from the suspicious circumstances that it was dealing with a potentially fraudulent development scheme. Therefore, the Court finds the receiver has met its burden of proving the bankruptcy court clearly erred in its finding that JSM was in good faith.

This Court also finds that the bankruptcy court also erred in finding that JSM gave value. JSM's expert looked at the transaction as if it was a loan or other investment rather than a payment for rights to buy property. Also, the facts indicate that the bankruptcy court clearly erred in finding that the property was tied up. Because the option was day-to-day, JSM could legally cancel this option at its will.

---

**30.** *Meeks v. Greenville Casino Partners, L.P. (In re Armstrong),* 217 B.R. 569, 575 (Bkrtcy. E.D.Ark.1998). (citations omitted).

**31.** *Id.*

**32.** Original Brief on Behalf of Appellant, rec. doc. no. 4, p. 33 (citing transcripts).

### D. The § 544(b) Claim under Louisiana Law

Under § 544(b) the trustee is authorized to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowed under ... this title." The receiver argued that transfers to JSM were voidable under the Louisiana revocatory action found in Louisiana Civil Code article 2036.

Article 2036 provides:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

The bankruptcy court found that a plaintiff in a revocatory action "must prove: (1) pre-existing and accrued indebtedness, (2) that causes or increases the insolvency of the debtor." [33] The bankruptcy court based its legal conclusion on *Central Bank v. Simmons.*[34] The bankruptcy court found that the transfers caused or increased the insolvency of the debtor and held that the receiver proved the second element of the test set forth above. The bankruptcy court failed to make a finding as to the first element of the above test. Thus, the bankruptcy court did not decide whether plaintiff established the revocatory claim.

A review of the bankruptcy court's opinion shows that the bankruptcy court failed to invoke the proper methodology in analyzing the revocatory issue; therefore, the Court will review this issue de novo.

To succeed in a revocatory action, a plaintiff must prove anteriority of the debt and insolvency of the debtor.[35] Thus, the receiver must prove that: (1) the debtors owed the investor/creditors before they made the transfers to JSM; and, (2) the transfers caused or increased the insolvency. The receiver met the burden of proving the anteriority of the debt, since it is clear that the debtors owed the debts to the investor/creditors before the transfers were made to JSM. The facts also support the bankruptcy court's finding that the transfers increased the insolvency of the debtors. Thus, the receiver has proven the necessary elements to revoke the transactions under Article 2036 and 11 U.S.C. § 544(b).

The Court now turns to JSM's defense which relies on Louisiana Civil Code article 2040. Article 2040 provides that "[a]n obligee may not annul a contract made by the obligor in the regular course of his business." The bankruptcy court held that the transfers were made in the ordinary course of business and could not be annulled.

It is difficult for this Court to find that Recile was acting in the course and scope of his business when at the same time the bankruptcy court held that "Recile acted with the intent to hinder, delay, and defraud investor/creditors of Hannover/Place Vendome in effecting transfers to JSM." [36] The Court has previously summarized the facts on the fraudulent conduct of Recile and the debtors. The Court has also set forth findings that JSM did not act in good faith, was aware or should have been aware that the debtors were acting in a fraudulent manner and knew the debtors

---

**33.** Memorandum Opinion, p. 60.

**34.** 595 So.2d 363, 365.

**35.** La. C.C. art.2036, cmt. (f); See *Central Bank v. Simmons,* 595 So.2d 363 (La.App. 2 Cir.1992).

**36.** Memorandum Opinion, p. 30, ¶ 109.

were insolvent at the time of the payments. Such findings prevent this Court from also finding that Recile and the debtors were acting in the ordinary course of business and thus allow JSM to assert a defense to the Louisiana revocatory action.

E. Conclusion:

For reasons set forth above, the Court hereby reverses the decision of the bankruptcy court. This matter is remanded to the bankruptcy court for further proceedings in accordance with this opinion.

Judgment shall be entered accordingly.