NOT FOR PUBLICATION

FILED

APR 05 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.  NC-11-1193-HSaD |
| ) | |
| LORI MAC, INC., ) | Bk. No.  07-30165 |
| ) | |
| Debtor. ) | Adv. No. 07-03136 |
| _____) | |
| ) | |
| PACIFIC SPORTS SECTION, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| E. LYNN SCHOENMANN, Chapter 7 ) | |
| Trustee; UNITED STATES ) | |
| TRUSTEE, San Francisco, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on January 19, 2012
at San Francisco, California

Filed – April 5, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Thomas E. Carlson, Bankruptcy Judge, Presiding

Appearances:    James S. Monroe of Monroe Law Group argued for appellant Pacific Sports Section, Inc.  Aron Mark Oliner of Duane Morris LLP, argued for appellee, E. Lynn Schoenmann, Chapter 7 Trustee.

Before: HOLLOWELL, SALTZMAN,[2] and DUNN, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] The Hon. Deborah J. Saltzman, Bankruptcy Judge for the Central District of California, sitting by designation.

The debtor sold a promissory note to appellant, Pacific Sports Section, Inc. (PSS). The bankruptcy court determined that the sale of the note constituted a constructively fraudulent transfer and allowed the Trustee to avoid and recover it for the benefit of the estate. PSS appeals that determination. We AFFIRM.

## I.  FACTS

Lori Mac, Inc. (the Debtor) was in the business of servicing mortgages funded by the Federal National Mortgage Association (FNMA) and various credit unions, as well as originating mortgages that it then sold to other lenders. The Debtor received fees for originating loans and for collecting payments on mortgages and remitting them to the owners of the loans. However, the Debtor's expenses exceeded its income. It used money from its customers' loan payments to pay for operating expenses and eventually accumulated a significant liability to the lenders. On February 13, 2007, the Debtor filed a chapter 7 bankruptcy petition (the Petition Date). E. Lynn Schoenmann was appointed the bankruptcy trustee (the Trustee).

The Debtor was a wholly owned subsidiary of TIS Financial Services, Inc. (TISFS). Appellant PSS is also a subsidiary of TISFS. Lorraine Legg (Legg) is the President and Chief Executive Officer of TISFS, as well as of several other affiliated mortgage investment companies that seemingly share rental space in San Francisco with the Debtor. Legg also served as the Debtor's President and Chief Executive Officer. She is an officer of PSS.

On December 6, 2007, the Trustee initiated an adversary proceeding seeking to avoid and recover, under §§ 544, 548 and

-2-

550, two transfers it alleged were constructively fraudulent (the Adversary Proceeding). The first transfer involved a promissory note, known as the Ignacio Note, which is discussed more fully below. The second transfer involved a series of cash transfers made by the Debtor to TISFS. The bankruptcy court bifurcated the Adversary Proceeding into two phases, the first to address the transfer of the Ignacio Note; the second to address whether the Trustee could avoid the cash transfers made by the Debtor. This appeal concerns only the Ignacio Note.

The Ignacio Note

In May 2001, Ignacio Properties LLC (Ignacio) and Legg executed a promissory note in the amount of $335,000 (the Ignacio Note). The Ignacio Note was secured by a second deed of trust on a shopping center in Novato, California, which was operated and managed by a subsidiary of TISFS.

In November 2004, Legg assigned the Ignacio Note to the Debtor. On January 31, 2007 (the Transfer Date), within two weeks of the Petition Date, the Debtor executed an Assignment of Mortgage, transferring the Ignacio Note and deed of trust to PSS. PSS paid $260,000[3] for the Ignacio Note, but the money was paid to TISFS rather than the Debtor. After the Petition Date, Ignacio refinanced the Property and paid off the Ignacio Note. The proceeds of the Ignacio Note, $530,643.27, are being held in escrow pending the conclusion of the adversary proceeding, including this appeal.

---

[3] The purchase price was $300,000, but there was a $40,000 concession for the cost of certain necessary improvements for the Property.

Factual Dispute

While there is no dispute that the Debtor's financial difficulties rendered it insolvent as of the Petition Date (its debts exceeded its assets), the parties dispute whether the Ignacio Note was transferred for reasonably equivalent value, and therefore, whether it constituted a constructively fraudulent transfer.

The Trustee contends that the Debtor received no consideration for the Ignacio Note. PSS, on the other hand, asserts that the consideration the Debtor received was a $260,000 reduction in a debt it allegedly owed to TISFS. PSS contends that the Debtor agreed to sell it the Ignacio Note in July 2006, and that PSS agreed to pay for the Ignacio Note in four installments between December 21, 2006, and January 31, 2007. ER 103. Because TISFS routinely paid various operating expenses for the Debtor, Legg believed that the Debtor owed TISFS more than $260,000. Therefore, she directed PSS to make the payments on the Ignacio Note to TISFS, rather than the Debtor, in order to satisfy the Debtor's debt to TISFS. As a result, PSS argues that the Debtor received reasonably equivalent value for the Ignacio Note. Thus, the central issue in this case is whether the Debtor did, in fact, owe an obligation to TISFS on the Transfer Date.

Payment of Expenses

TISFS paid many of the Debtor's (and its other subsidiaries') operating expenses, including payroll, payroll benefits and rent for the San Francisco office (the Allocated Services). In turn, the Debtor made monthly payments to TISFS for its share of the Allocated Services. However, the Debtor

-4-

paid separately the payroll for employees who worked solely for it, rather than those who worked for the Debtor as well as other TISFS subsidiaries (the Direct Services).

The Debtor maintained an accounting of payments for Direct Services and Allocated Services. Among those records, three were significantly relied on by the parties as evidencing whether the Debtor owed TISFS money at the Transfer Date: (1) a spreadsheet, which was allegedly a contemporaneously maintained "working document" that tracked the Debtor's Direct Services payments, the estimated Allocated Services payments, and payments received by the Debtor from TISFS (Trial Ex. 1 or the Spreadsheet); (2) a spreadsheet generated after the Petition Date that listed the Allocated Services paid by TISFS on behalf of the Debtor and its other subsidiaries (Trial Ex. 2 or the Alternate Ledger); and (3) the Debtor's contemporaneously maintained QuickBooks report, which tracked all payments made between TISFS and the Debtor (Trial Ex. 3 or the Ledger).

The bankruptcy court held a three-day trial on the first phase of the Adversary Proceeding. Subsequently, on December 21, 2010, the bankruptcy court issued its findings of fact and conclusions of law. The bankruptcy court found that according to the accounting records, the Debtor did not owe a debt to TISFS on the Transfer Date, but rather TISFS owed the Debtor over $1.7 million. The bankruptcy court's finding was based on its determination that TISFS' payments for Allocated Services were capital contributions to the Debtor (which did not create a debt obligation), and the subsequent payments made by the Debtor to TISFS were, therefore, loans.

The bankruptcy court entered a judgment on April 6, 2011, allowing the Trustee to avoid and recover the Ignacio Note under §§ 548 and 550 for the benefit of the Debtor's estate. PSS timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(H), and § 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in finding that the Debtor did not receive any value for the transfer of the Ignacio Note, rendering it constructively fraudulent?

## IV. STANDARDS OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109 (9th Cir. 2010). Determining reasonably equivalent value of a transfer is a question of fact. Id.; see also 5 COLLIER ON BANKRUPTCY, ¶ 548.05 (Alan N. Resnick & Henry J. Sommer, eds., 16th rev. ed. 2011); Tex. Truck Ins. Agency, Inc. v. Cure (In re Dunham), 110 F.3d 286, 288-89 (5th Cir. 1997) (collecting cases).

A finding is clearly erroneous if it is "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)). The clearly erroneous standard does not "entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the

-6-

case differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). Moreover, when factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id. at 575; see also Rule 8013.

## V. DISCUSSION

Section 548 allows a trustee to avoid fraudulent transfers. Under this section, a bankruptcy court can set aside "not only transfers infected by actual fraud but certain other transfers as well, so-called constructively fraudulent transfers." BFP v. Resolution Trust Corp., 511 U.S. 531, 535 (1994). Section 548(a)(1)(B) allows for the avoidance of constructively fraudulent transfers of an interest of a debtor in property.

In order for the Trustee to avoid the transfer of the Ignacio Note to PSS, she was required to demonstrate that: (1) the Debtor had an interest in property; (2) a transfer of that interest occurred within two years of the filing of the bankruptcy petition; (3) the Debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the Debtor received less than reasonably equivalent value in exchange for such transfer. Id. Only the fourth element is at issue in this appeal.

The bankruptcy court found that the Debtor received less than reasonably equivalent value in exchange for the transfer of the Ignacio Note. The bankruptcy court's decision on this issue

7

centered on its finding that there was not an obligation owing by the Debtor to TISFS at the Transfer Date. The key finding in this regard was the bankruptcy court's determination that TISFS' payment of Allocated Services constituted capital contributions to the Debtor, which created no corresponding obligation on the part of the Debtor. Therefore, the bankruptcy court determined that the payments the Debtor remitted to TISFS on Allocated Services had to be accounted for as loans under accounting principles. As a result, the bankruptcy court found that the balances due and owing between TISFS and the Debtor as of the Transfer Date indicated that TISFS owed the Debtor more than $1.7 million.

PSS contends this finding is "unsupported by anything in the record." PSS asserts that the Spreadsheet and the Alternate Ledger demonstrated that the Debtor was obligated to pay TISFS for its own business expenses--the Allocated Services and Direct Services. PSS argues that TISFS only acted as a paymaster or conduit for paying those expenses. PSS asserts that the Spreadsheet and the Alternate Ledger demonstrated that TISFS' payments were not capital contributions but advances to the Debtor, which created an obligation the Debtor was required to repay. As a result, PSS argues that the Debtor owed TISFS an amount greater than $260,000 on the Transfer Date.

However, the bankruptcy court did not find the Spreadsheet, Alternate Ledger or Legg's testimony about the accounting credible. Instead, the bankruptcy court found the testimony of the Trustee's accounting expert (the Expert) persuasive. The Expert stated that, according to the Ledger, which was

8

contemporaneously maintained by John Castello, the Chief Financial Officer for both TISFS and the Debtor,[4] it appeared that TISFS treated the payment of Allocated Services as capital contributions to the Debtor and treated the Debtor's payment of its share of the Allocated Services as loans to TISFS. Based on the balances from the Ledger, the Debtor owed nothing to TISFS on the Transfer Date.

TISFS' independent auditor confirmed the figures in the Ledger as fairly representing the balances due between the Debtor and TISFS. Legg and Castello both signed letters confirming the auditors' findings.

Nevertheless, PSS contends that the Ledger is inaccurate because it did not account for TISFIS' payment of Allocated Services. However, the Expert testified that the only Allocated Service item not provided on the Ledger was the rent, presumably, he opined, to minimize the gap in the Debtor's capital account that the Debtor was required to maintain for FNMA regulatory purposes. Indeed, the Expert opined that the practice of treating TISFIS' payments for Allocated Services as capital contributions would serve to increase the Debtor's capital account, something that was required since the Debtor's financial situation made it difficult for it to otherwise maintain the minimum capital requirements under FNMA regulations. Hr'g Tr. (Dec. 14, 2010) at 33-34.

---

[4] Mr. Castello left the employment of TISFIS and the Debtor approximately three months before the Petition Date and did not testify at the trial as to the accounting practices reflected in the Ledger.

It may have been plausible for the bankruptcy court to have inferred from the Alternate Spreadsheet and Legg's testimony that TISFS's payments for Allocated Services were advances that the Debtor was obligated to repay. However, it was also plausible for the bankruptcy court to infer that the Ledger, supported by the Expert testimony and audit letters demonstrated that the payments made by TISFS were capital contributions, and thus, did not create a debt obligation between the Debtor and TISFS. Because there were two plausible interpretations of the evidence, the bankruptcy court's finding that there was no obligation owing by the Debtor to TISFS on the Transfer Date is not clearly erroneous. S.E.C. v. Rubera, 350 F.3d 1084, 1093-94 (9th Cir. 2003) ("So long as the district court's view of the evidence is plausible in light of the record viewed in its entirety, it cannot be clearly erroneous, even if the reviewing court would have weighed the evidence differently had it sat as the trier of fact."); In re JTS Corp., 617 F.3d at 110 quoting Anderson v. City of Bessemer City, N.C., 470 U.S. at 574 ("[I]f there are two views of the evidence, a court's choice between them is not clearly erroneous."). Moreover, we defer to the bankruptcy court's finding that Legg's testimony – including that TISFS intended to treat its payment of Allocated Services as advances to the Debtor rather than capital contributions – was not credible.

Accordingly, the bankruptcy court's finding that the Trustee proved the Debtor received less than reasonably equivalent value for the transfer of the Ignacio Note is not clearly erroneous.

10

## VI.   CONCLUSION

For these reasons, we AFFIRM the judgment of the bankruptcy court allowing the Trustee to avoid and recover the Ignacio Note for the benefit of the estate.

11