FILED
United States Court of Appeals
Tenth Circuit

July 14, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

R. WAYNE KLEIN, the
Court-Appointed Receiver of U.S.
Ventures LC, Winsome Investment Trust,
and the assets of Robert J. Andres
and Robert L. Holloway,

        Plaintiff - Appellee,

v.

KING & KING & JONES,

        Defendant - Appellant.

No. 13-4131
(D.C. No. 2:12-CV-00051-DBP)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.

R. Wayne Klein ("Mr. Klein" or "Receiver"), the court-appointed receiver for

Winsome Investment Trust ("Winsome"), filed this action to recover funds paid from

Winsome to King & King & Jones, P.C. ("KKJ"). The district court granted

summary judgment in favor of the Receiver. KKJ appeals, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

KKJ is an Atlanta, Georgia, law firm. In 2006, an individual named Enrique Baca retained KKJ to defend him against pending criminal charges in Georgia state court, for a fee of $25,000. The payment to KKJ came in the form of two wire transfers of $12,500 each to KKJ from Winsome's bank account. KKJ's state-court efforts on Mr. Baca's behalf were successful: in 2007, the charges were dropped.

The nature of Mr. Baca's relationship to Winsome, and Winsome's reasons for paying KKJ to represent him, do not appear in the record. The record does reflect that beginning as early as 2005, Winsome was operated as an illegal Ponzi scheme.[1] Between 2005 and 2011, it collected millions of dollars from investors, much of which it lost in a series of ill-fated ventures. It is undisputed that the funds paid to KKJ to represent Mr. Baca were derived from this Ponzi scheme.

In January 2011, as the result of an action filed by the Commodity Futures Trading Commission, Mr. Klein was appointed receiver for Winsome and for a number of other related individuals and entities. Among his duties as receiver, he was charged with recapturing and returning investor funds that were diverted as part of the Ponzi scheme. Mr. Klein then filed this action seeking to recover the $25,000 KKJ received from Winsome. He theorized that the wire transfers from Winsome

---

[1] A "Ponzi" scheme is "an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments," and usually attracting investors by promising them "large returns for their investments." *In re Hedged-Investments Assocs., Inc.*, 48 F.3d 470, 471 n.2 (10th Cir. 1995).

amounted to fraudulent transfers under Utah law, or, alternatively, that KKJ had been unjustly enriched by them.

The parties filed cross-motions for summary judgment. The district court granted the Receiver's motion for summary judgment and denied KKJ's motion. The district court reasoned that although KKJ received the wire transfers in good faith as payment for legal services provided to Mr. Baca, KKJ provided no value to Winsome for the funds it received. The beneficiary of the payments from Winsome to KKJ was Mr. Baca, not Winsome. The district court concluded that the payments, which amounted to both actual and constructive fraudulent transfers, should therefore be recouped in favor of Winsome's investors.

## ANALYSIS

We review the district court's summary-judgment determination de novo. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156 (10th Cir. 2013). Summary judgment should be granted when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Thompson*, 732 F.3d at 1156–57 (internal quotation marks and brackets omitted).

A federally appointed receiver may sue under state uniform-fraudulent-transfer law to recover assets fraudulently transferred to third parties pursuant to a Ponzi scheme. *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190

(5th Cir. 2013). Here, the Receiver relies on Utah's Uniform Fraudulent Transfer Act, Utah Code Ann. §§ 25-6-1 to 25-6-14 ("UFTA"). "Because the [UFTA] is remedial in nature, it should be liberally construed." *Nat'l Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1069 (Utah 1998).

Under the UFTA, a transfer is actually fraudulent if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." § 25-6-5(1)(a). In the district court, KKJ conceded that Winsome made the transfers with actual intent to defraud its creditors. *See* KKJ's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Aplee. Supp. App. at 172, 174. The UFTA, however, provides a good-faith defense in actions seeking to avoid such fraudulent transfers. "A transfer or obligation is not voidable under Subsection 25-6-5(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." § 25-6-9(1). KKJ contends that it is entitled to the defense because it is both a "person who took in good faith and for reasonably equivalent value" and a "subsequent transferee."

In evaluating these defenses, we consider first whether KKJ "took in good faith and for reasonably equivalent value." The Receiver concedes that KKJ acted in good faith. The question is whether KKJ provided "reasonably equivalent value" for the $25,000 it received.

The district court concluded that to satisfy this requirement, KKJ must have provided "reasonably equivalent value" *to Winsome*. Because the record fails to

show that the legal services KKJ provided benefitted anyone but Mr. Baca, the district court further concluded that the "reasonably equivalent value" requirement was not met. We agree. *See, e.g.*, *S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301–02 (5th Cir. 2007) ("A payment made *solely* for the benefit of a third party, such as a payment to satisfy a third party's debt, does not furnish reasonably-equivalent value to the debtor" (internal quotation marks omitted) (applying Texas UFTA)); *Dietz v. St. Edward's Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080 (8th Cir. 1997) (per curiam) (applying similar provision in Federal Bankruptcy code);[2] *see also Dahnken, Inc. v. Wilmarth*, 726 P.2d 420, 422 (Utah 1986) (holding, under Utah's predecessor Uniform Fraudulent Conveyance Act, that "[s]atisfaction of an obligation owed the transferee by a third party does not qualify as fair consideration" for payment by the debtor).[3]

Nor is KKJ entitled to the UFTA's exceptions for subsequent transferees, Utah Code Ann. § 25-6-9(1), or subsequent good-faith transferees, *id.* § 25-6-9(2)(b). As a

---

[2]     *Bargfrede* interpreted the phrase "reasonably equivalent value" used in the fraudulent transfer provision of the Federal Bankruptcy Code, 11 U.S.C. § 548. The phrase "reasonably equivalent value" in the UFTA was derived from § 548, and we therefore find this interpretation persuasive. *See Frank Sawyer Trust of May 1992 v. Comm'r*, 712 F.3d 597, 608 n.2 (1st Cir. 2013) (stating cases construing § 548 offer guidance in interpreting meaning of "reasonably equivalent value" used in UFTA).

[3]     "Fair consideration" is a predecessor term to "reasonably equivalent value," and serves a similar function to the latter term in the fraudulent transfer context. *See Texas Truck Ins. Agency, Inc. v. Cure (In re Dunham)*, 110 F.3d 286, 289 (5th Cir. 1997) (equating "fair consideration" with "reasonably equivalent value" for purposes of § 548).

direct transferee and recipient of the funds wired from Winsome's account, who obtained dominion and control over the funds once they were transferred, KKJ was not a "subsequent" transferee. Rather, KKJ was the "initial" transferee. *See, e.g.*, *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1202–05 (10th Cir. 2002) (applying similar "initial transferee" concept in Bankruptcy Code, 11 U.S.C. § 550(a)).

Also, Mr. Baca was not the initial transferee, as KKJ argues. There has been no showing that the wire transfer gave him actual dominion or control over the funds, which were wired directly from Winsome's account to KKJ. *See Rupp v. Markgraf*, 95 F.3d 936, 938–40 (10th Cir. 1996) (concluding, based on similar Bankruptcy Code provision in 11 U.S.C. § 550, that individual who caused a corporate debtor to make a fraudulent transfer to his creditors through his role as corporate principal, but who never personally had dominion and control of funds, was the "entity for whose benefit the transaction was made," and that the *recipients* of funds were the initial transferees).

Finally, we agree with the district court that in addition to being actually fraudulent, the transfers were constructively fraudulent under § 25-6-5(1)(b). Under the UFTA, a transfer is constructively fraudulent if it was made without the debtor receiving "a reasonably equivalent value in exchange" and if either the debtor's remaining assets were unreasonably small in relation to the transaction, or the debtor "intended to incur, or believed or reasonably should have believed that he would

incur, debts beyond his ability to pay as they became due." § 25-6-5(1)(b). For reasons we have already stated, the transfers were not made for reasonably equivalent value. Furthermore, as the district court recognized, "Winsome's operation as Ponzi scheme also shows that Winsome intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due." Aplee. Supp. App. at 209 (internal quotation marks and brackets omitted).

In sum, the district court correctly determined that the transfers to KKJ were actually and constructively fraudulent under the Utah UFTA. KKJ is not entitled to either the good-faith "reasonably equivalent value" or the "subsequent transferee" defenses under the UFTA. We therefore affirm the grant of summary judgment to the Receiver, the denial of summary judgment to KKJ, and the judgment of the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge